### A02A0321. O'CONNOR v. THE STATE.
(567 SE2d 29)

PHIPPS, Judge.

A jury found Catherine Amanda O'Connor guilty of affray, aggravated assault, and voluntary manslaughter after she cut and killed Richard Seay during a fight. She contests the sufficiency of the evidence, jury instructions on her defense of justification, and the denial of her motion for new trial. Finding the evidence sufficient and finding no reversible error, we affirm.

Construed in a light most favorable to the jury's verdict, the evidence showed that on March 27, 1998, Michael Brown and his former girlfriend, Courtney Hulsey, engaged in heated arguments on the telephone. Others participated on each end of their arguments, and threats were exchanged. Brown and four friends, including Seay, went to confront Hulsey and her supporters.

Hulsey and some of her supporters were outside when O'Connor, who had not yet met Hulsey, arrived and sat on the porch. In response to the group's comments about Brown coming over, O'Connor placed a knife on her belt loop, pulled her shirt over it, and announced, "I'll handle it. I'll take care of it."

Ten minutes later, Brown and his friends arrived. Brown and two friends stood in the yard during a shouting match. Although Seay had initially stayed in the car, at some point, he had stepped out and told his friends to get back inside. When the shouting match subsided, they began walking back to the car. Then Hulsey approached Brown. An argument erupted, and Brown pushed her to the ground.

At that point, O'Connor muttered, "Oh, hell, no," jumped off the porch, and approached the others. Seay punched O'Connor, who fell back, bent over, and then reached toward his neck and chest. They wrestled to the ground and exchanged blows, with Seay on top of

O'Connor. Brown and a friend ran to the two and kicked O'Connor.

Police arrived, and the crowd dispersed. Seay took a few steps and then collapsed. He had sustained a fatal knife wound to his neck. O'Connor's blood-spattered knife was later found hidden, and a forensic pathologist who conducted an autopsy testified that the knife could have caused the wound.

As O'Connor walked past Hulsey on her way to an ambulance, she said, "Bitch, I'll get you next." The next day, while O'Connor was at the sheriff's department to have photographs taken of her injuries, she recognized someone and attempted to go toward him. When the escorting officer grabbed her arm, she said, "Get your hands off me or I'll gut you too."

At trial, O'Connor presented no evidence. Her attorney urged during closing argument that she had been justified in using deadly force.

1. O'Connor contests the sufficiency of the evidence, arguing that the State failed to disprove that she acted with justification.

A person is justified in using force intended or likely to cause death or great bodily harm only if she reasonably believes that such force is necessary to prevent death or great bodily injury to herself or a third person or to prevent the commission of a forcible felony.[1] Justification provides no defense, however, to a person who was the aggressor or who was engaged in combat by agreement, unless the person had effectively withdrawn from the encounter and the other person continued or threatened to continue to use unlawful force.[2] Combat by agreement occurs where there is a mutual intent by the accused and another to fight.[3] This intent may be inferred from the acts and conduct of the parties, as well as the circumstances before, during, and after the commission of the crime.[4] The question of intent is for the jury.[5]

The evidence showed that when O'Connor learned that Brown was coming, she armed herself with a knife and vowed to "handle" or "take care" of the situation. As the confrontation escalated, O'Connor walked into it and engaged in fighting with Seay, who also had walked into it. There was no evidence that O'Connor at any time withdrew from the encounter. And afterward, she threatened to "get" and "gut" others. The jury was authorized to reject O'Connor's defense of justification.

---

[1] OCGA § 16-3-21 (a).

[2] OCGA § 16-3-21 (b) (3).

[3] See *Roberts v. State*, 215 Ga. App. 881, 882 (452 SE2d 570) (1994); *Pendergrass v. State*, 199 Ga. App. 467 (405 SE2d 297) (1991); *Johnson v. State*, 135 Ga. App. 360, 361-362 (3) (217 SE2d 618) (1975).

[4] *Hanifa v. State*, 269 Ga. 797, 809 (8) (505 SE2d 731) (1998); *Pendergrass*, supra.

[5] *Pendergrass*, supra.

On appeal, O'Connor in effect asks us to reweigh the evidence to place greater credence in her justification defense than did the jury. She points out that there was no eyewitness testimony as to how she stabbed Seay, urging that she wielded the knife in self-defense. But the jury could have found that the circumstantial evidence excluded any other reasonable hypothesis except that of O'Connor's guilt.[6] This court does not weigh the evidence or assess the credibility of witnesses; rather, we determine whether the evidence, viewed in a light most favorable to the verdict, was legally sufficient under the standard of *Jackson v. Virginia*.[7] The record reveals ample direct and circumstantial evidence from which a rational trier of fact could have found O'Connor guilty beyond a reasonable doubt of voluntary manslaughter, aggravated assault, and affray.[8]

2. O'Connor contends that the jury charges on justification and the "combat by agreement" exception were erroneous, inappropriate, misleading, confusing, and harmful.

(a) O'Connor argues that the trial court erred by equating "combat by agreement" to "mutual combat." The court charged, "A person is not justified in using force if that person initially provokes the use of force against herself with intent to use such force as an excuse to inflict bodily harm upon the assailant or [if] such person was the aggressor or was engaged in combat by agreement or mutual combat." With the exception of the final phrase "or mutual combat," the charge closely tracked both the pertinent portions of OCGA § 16-3-21 (b) concerning justification exceptions and the standard charge on justification exceptions found in the Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, Part 3, § AA (2nd ed. 1991). We reject O'Connor's contention that the added words rendered the instruction erroneous and harmful.[9] Furthermore, the record demonstrates that the charge as a whole adequately and fairly explained that the "combat by agreement" exception to justification required a finding that the accused and another mutually intended to fight.[10]

(b) O'Connor claims that it was error for the trial court to instruct the jury that it was irrelevant who struck the first blow. This claim is without merit.[11]

---

[6] See *Johnson v. State*, 236 Ga. App. 61, 63 (1) (510 SE2d 918) (1999).

[7] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Johnson*, supra, 236 Ga. App. at 63-64.

[8] See OCGA §§ 16-5-2 (a); 16-5-21 (a) (2); 16-11-32 (a); *Smith v. State*, 249 Ga. App. 736, 737-738 (550 SE2d 106) (2001); *McGuire v. State*, 243 Ga. App. 899, 900 (1) (534 SE2d 549) (2000); *Johnson*, supra, 236 Ga. App. at 63-64; *Miller v. State*, 223 Ga. App. 311, 312 (477 SE2d 430) (1996).

[9] See *Pendergrass*, supra (using term "mutual combat" in explaining "combat by agreement"); OCGA § 16-3-21 (b) (3).

[10] See *Pendergrass*, supra.

[11] See *Harris v. State*, 183 Ga. App. 219, 220 (1) (358 SE2d 634) (1987).

(c) O'Connor complains of the trial court's answer to the jury's question: "Can you have mutual combat and justification?" The court answered, "[N]o. It's either justified or it's mutual combat." O'Connor complains that the court should have explained that the two are not mutually exclusive where the defendant had effectively withdrawn from the encounter, yet the other person continued to or threatened to continue to use unlawful force.

However, during the charge conference, O'Connor's attorney stated that that portion of the standard charge on justification was not adjusted to the facts and that it should be omitted. We agree that there was no evidence supporting that portion of the charge, and thus the court did not err by not giving it. Moreover, because the omission was self-induced, O'Connor cannot complain about it on appeal.[12]

(d) O'Connor challenges the trial court's response to the jury's question: "[C]an a defendant enter into a mutual combat and be guilty of involuntary manslaughter?"[13] The court answered, "[y]es," and then explained, "The defense of justification applies to every grade of homicide and assault. And therefore the exception to justification would apply to those same things. The exception to justification would be mutual combat, where the parties mutually agreed to fight, not in self-defense but an agreement to fight." O'Connor takes exception to the court's next statements concerning "affray," which also served as the predicate offense for the lesser included offense of involuntary manslaughter. The court continued, "if you find the Defendant guilty of an affray, then you would have found there was a mutual combat. Because justification also applies to affray."

O'Connor asserts that the original charge defining affray provided no instruction that the offense required an intent to fight.[14] She argues that by equating affray, as deficiently defined, to mutual combat, the court deprived her of her justification defense because it failed to make it clear to the jury that merely fighting to repel an unprovoked attack is not mutual combat.

"The charge to the jury is to be taken as a whole and not out of context when making determinations as to the correctness of same."[15]

---

[12] See *Emerson v. State*, 222 Ga. App. 596 (1) (474 SE2d 638) (1996).

[13] As a lesser included offense, the court had charged the jury on involuntary manslaughter.

[14] OCGA § 16-11-32 (a) defines "affray" as "the fighting by two or more persons in some public place to the disturbance of the public tranquility." An essential element of affray is the intent to fight, and it is not unlawful to fight in public where there is no intention of doing so; the automatic reflexes of any individual would cause him to push back the thing that is about to destroy him. *Johnson*, supra, 135 Ga. App. at 361-362. Where a party fights entirely in self-defense, he is not guilty of an affray. *Drake v. State*, 159 Ga. App. 606, 607 (2) (284 SE2d 109) (1981).

[15] (Punctuation and footnote omitted.) *Bacon v. State*, 249 Ga. App. 347, 350 (2) (548 SE2d 78) (2001).

Considering the jury charge as a whole, we find O'Connor's argument without merit. Immediately before the contested language, the court reminded the jury that mutual combat required a finding that "the parties mutually agreed to fight, not in self-defense." Immediately after the contested language, the court stated, "Just because you're fighting in public does not mean you cannot be justified. If you are justified, then you're not guilty of affray. Again, it addresses itself to the criminal intent element of the offense. In other words, the law does not prohibit you from defending yourself just because you're in a public place." And contrary to O'Connor's assertion otherwise, the court did instruct the jury in its original charge that a violation of the affray statute required an accompanying "intention to act." We are satisfied that the charge as a whole adequately and fairly conveyed to the jury that merely fighting to repel an unprovoked attack did not constitute the "combat by agreement" exception to justification.

3. O'Connor contends that the trial court erred in entertaining and overruling her amended motion for a new trial without affording her attorney an opportunity to review the trial and sentencing transcripts. O'Connor, however, has failed to demonstrate specifically how the lack of the transcripts harmed her. Absent such a showing, there is no reversible error.[16]

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED MAY 30, 2002 —
RECONSIDERATION DENIED JUNE 19, 2002 — 

*James C. Bonner, Jr., Mitchell D. Durham,* for appellant.
*Garry T. Moss, District Attorney, Allen D. Morris, Assistant District Attorney,* for appellee.

---

[16] See *Cunningham v. State*, 244 Ga. App. 231, 233 (1) (535 SE2d 262) (2000).