## A03A0806. TAHANTAN v. THE STATE.
### (581 SE2d 373)

MIKELL, Judge.

A jury convicted Amir Tahantan, Jr., of two counts of battery. The trial court sentenced him to 12 months probation and 50 hours of community service. He was also ordered to pay a $1,200 fine and restitution to the victim in the amount of $1,459.60. Tahantan appeals, arguing that the trial court erred in denying his motion for a directed verdict of acquittal. We affirm the conviction.

> The standard of review for the denial of a motion for directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction. Under that standard we view the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . Conflicts in the testimony of the witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve.

(Citation omitted.) *White v. State*, 250 Ga. App. 783 (552 SE2d 927) (2001). OCGA § 16-5-23.1 (a) provides: "A person commits the offense of battery when he . . . intentionally causes substantial physical harm or visible bodily harm to another." Applying the above standard of review to the evidence adduced at trial, we conclude that the evidence was sufficient for a rational trier of fact to find the elements of battery beyond a reasonable doubt.

Viewed in the light most favorable to the jury's verdict, the evidence shows that on April 26, 2001, James Stevenson and two friends attended a matinee. Tahantan was seated one or two rows in front of them. Shortly after the movie began, Tahantan's cellular telephone rang, and he began a conversation with the caller. Stevenson asked Tahantan to be quiet, but he ignored the request. After he finished his phone call, Tahantan approached Stevenson, who was sitting down with his feet propped up on the railing in front of him. A verbal exchange ensued, during which Stevenson remained seated. Stevenson testified that Tahantan became upset, leaned down with his hand on the arm of Stevenson's chair, grabbed Stevenson's cheek, and, when Stevenson attempted to push him away, Tahantan struck him in the face. Stevenson's glasses were broken by the blow, and he suffered a laceration on his forehead requiring stitches. When Stevenson stood up, Tahantan said, "I'm sorry. I'm sorry. I'm sorry," and ran out of the theater to the parking lot. Stevenson and his friend followed Tahantan outside. When they confronted him, Tahantan offered to pay Stevenson for any damage to his property. Stevenson

initially asked Tahantan to get him some towels or napkins to stop the bleeding from his head, but when he realized the severity of his laceration, he told Tahantan, "you're going to jail for this. This is not right." At that point, Tahantan ran. Stevenson summoned a theater security guard, and the men chased Tahantan to his vehicle. Tahantan agreed to return to the theater lobby.

Emergency medical personnel were called to treat Stevenson's injury. Tahantan's father arrived at the theater shortly thereafter, and the parties entered into a written agreement providing that Tahantan would pay Stevenson for the damage to his glasses and clothing and for any medical expenses incurred as a result of the laceration. In exchange for the promised restitution, Stevenson agreed not to press charges. Tahantan expressly stated in the agreement that "[d]uring said altercation, I approached Mr. Stevenson and struck him while he was seated, breaking his prescription eyeglasses and lacerating his forehead." When Tahantan failed to make the agreed-upon payment, Stevenson swore out an arrest warrant. An accusation was filed in DeKalb County, charging Tahantan with two counts of battery.

At trial, Tahantan raised the defense of justification. He alleged that Stevenson was the primary aggressor in the altercation, and that he acted in self-defense after Stevenson tried to choke him. He called two witnesses who testified that Stevenson grabbed Tahantan's throat before Tahantan struck Stevenson's face. Stevenson denied choking Tahantan and testified that he merely attempted to shove him away after Tahantan grabbed his cheek.

On appeal, Tahantan argues that the trial court erred in denying his motion for a directed verdict of acquittal because he was justified in striking Stevenson. OCGA § 16-3-21 (a) provides, in pertinent part, that "[a] person is justified in . . . using force against another when and to the extent that he . . . reasonably believes that such . . . force is necessary to defend himself . . . against such other's imminent use of unlawful force." Tahantan argues here, as he did in his motion, that Stevenson was the aggressor and that he acted in self-defense. However, we conclude that the trial court properly ruled that whether Tahantan was justified in striking Stevenson was a question for the jury.

> [Tahantan] in effect asks us to reweigh the evidence to place greater credence in [his] justification defense than did the jury. . . . This court does not weigh the evidence or assess the credibility of witnesses; rather, we determine whether the evidence, viewed in a light most favorable to the verdict, was legally sufficient under the standard of *Jackson v. Virginia*[, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979)]. The

record reveals ample . . . evidence from which a rational trier of fact could have found [Tahantan] guilty beyond a reasonable doubt of [battery].

(Footnotes omitted.) *O'Connor v. State*, 255 Ga. App. 893, 895 (1) (567 SE2d 29) (2002). Accordingly, the trial court did not err in denying Tahantan's motion for a directed verdict, and we affirm the conviction.

*Judgment affirmed. Johnson, P. J., and Eldridge, J., concur.*

DECIDED APRIL 11, 2003.

*Robert J. Storms*, for appellant.
*Gwendolyn R. Keyes, Solicitor-General, Courtney L. Johnson, Assistant Solicitor-General*, for appellee.