## A09A1455. THE STATE v. HOGANS.
(687 SE2d 230)

MILLER, Chief Judge.

Following an evidentiary hearing, the trial court granted Randall Sebastian Hogans's motion to suppress the contraband seized from his vehicle. The State appeals, claiming that the trial court erred in finding that a law enforcement officer was not permitted to ask a third party for consent to search Hogans's vehicle during a first-tier encounter. We agree with the State that under the circumstances the officer was permitted to ask for consent to search. We reverse and remand with direction that the trial court reconsider the motion to suppress because the trial court's ruling was based on an erroneous legal theory and because the trial court avoided resolving certain conflicts in the evidence.

> On appeal from a ruling on a motion to suppress, we must construe the evidence most favorably to affirming the trial court's factual findings and judgment. We accept the trial court's factual and credibility determinations unless they are clearly erroneous, and the factual findings will be upheld if they are supported by any evidence. The trial court's application of the law to undisputed facts, however, is subject to a de novo standard of review.

(Citation omitted.) *Peterson v. State*, 294 Ga. App. 128, 129 (1) (668 SE2d 544) (2008).

So viewed, the evidence showed that a police sergeant initiated a traffic stop of a Cadillac Escalade because he suspected its tinted windows violated the law. Hogans was driving and Camille Blakely was in the passenger's seat. The officer approached the vehicle, which displayed a drive-out tag, and spoke with Blakely, who told him that the vehicle was hers and that she had just bought it. Notwithstanding Blakely's statements to the officer, Hogans and his wife owned the Cadillac Escalade. Blakely testified that she lied to the officer because she thought it would keep Hogans from being arrested for driving with a suspended license.

Although the windows were obscured, the officer decided to give Blakely a verbal warning because the vehicle was new. The officer asked Hogans for his license, but Hogans handed him a Florida identification card and claimed that he and Blakely were on their way to Florida to "get his license fixed." A computer check showed that Hogans's license had been suspended indefinitely. Based on this information, the officer arrested Hogans and placed him in the back of the patrol car.

After securing Hogans, the officer returned to the vehicle and explained to Blakely that he had placed Hogans under arrest for driving with a suspended license. The officer agreed, upon Blakely's request, that she could follow him to the police station. Shortly after the officer arrived at the station with Hogans, Blakely pulled up in the Escalade and parked at the side of the building.

The officer placed Hogans in the officers' room and then spoke with Blakely in the front lobby of the building, where he asked her for consent to search the vehicle. The officer testified that Blakely's response to his first request to search was "surprise," and he further testified that she consented when "I asked her again."

According to Blakely, in response to the officer's initial request to search, "I told him I didn't see a reason why he should search the vehicle." After the officer indicated that Hogans had an extensive record, and that because of the record he wanted to search the vehicle, she responded "that I did not feel comfortable with him searching the vehicle." Finally, the officer

> told me that if I did not give him permission to search the vehicle that he would bring the dogs out to my vehicle to search it anyway. I told him if that was the case that he might as well search the vehicle, if he's going to bring the dog out anyway.

The officer and Blakely went outside, and Blakely used an electronic key lock to grant him access to the vehicle. As soon as he opened the door, the officer saw a 9-millimeter handgun sitting on

top of Blakely's open overnight bag, which was located on the back passenger's side floorboard. Blakely claimed to have no knowledge of the weapon. Continuing the search, the officer found a shower cap underneath the gun, and underneath the shower cap he found a clear baggie containing what appeared to be multi-colored "Ecstasy" pills inside Blakely's bag.[1] When the officer asked Blakely about the drugs, she started crying. In a subsequent interview, Hogans claimed ownership of the contraband, and accordingly Hogans was charged and Blakely was allowed to leave.

1. The trial court granted the motion to suppress on the ground that "once they arrested Mr. Hogans, moved him into the car under arrest, that was the end of that. They had no right to then come back and ask, without some reasonable suspicion, to search the car." The State contends that the trial court erred in concluding that the officer was prohibited from asking Blakely for consent to search the vehicle. We agree.[2]

"To pass muster under the Fourth Amendment, the continued questioning of a driver and passengers outside the scope of a valid traffic stop is permissible only when the officer has a reasonable articulable suspicion of illegal activity or when the valid traffic stop has become consensual." (Citation and punctuation omitted.) *State v. Felton*, 297 Ga. App. 35, 37 (676 SE2d 434) (2009). See *State v. Connor*, 288 Ga. App. 517, 519 (654 SE2d 461) (2007). However, it is the "unsupported additional detention, not police questioning, which constitutes the Fourth Amendment violation." (Citation and punctuation omitted.) *Felton*, supra, 297 Ga. App. at 37. Here, Blakely voluntarily followed the officer to the police station. She was not detained when the officer approached her and asked for consent to search the vehicle. In a police-citizen encounter involving no coercion or detention, or "first-tier encounter," an officer's request for consent to search does not require articulable suspicion of criminal activity. *Robinson v. State*, 295 Ga. App. 136, 137-138 (1) (670 SE2d 837) (2008).

2. Hogans concedes that in a first-tier encounter an officer may ask for consent to search without reasonable articulable suspicion of criminal activity. He argues, however, that the trial court correctly

---

[1] It is unclear from the record why Hogans was also charged with trafficking in methamphetamine.

[2] Neither the State nor Hogans questions Blakely's authority to give consent under the circumstances, which included that Hogans was content to remain silent while Blakely misinformed a law enforcement officer that she owned the vehicle. "[T]he State may properly show that a warrantless search was justified based on permission to search being obtained by a third party, [but] that third party must possess common authority over or other sufficient relationship to the premises or effects sought to be inspected." (Citation and punctuation omitted.) *Tidwell v. State*, 285 Ga. 103, 105 (1) (674 SE2d 272) (2009).

granted his motion to suppress because Blakely became unlawfully detained by the officer after he asked for permission to search and was denied, and because her consent to search was not freely and voluntarily given, but coerced.

Although argued below, the trial court never ruled on the issues raised by Hogans. We will, if appropriate, uphold a trial court's ruling on a motion to suppress if it is right for any reason. See *Fincher v. State*, 276 Ga. 480, 481 (2) (578 SE2d 102) (2003); *Gaston v. State*, 257 Ga. App. 480, 482-484 (2) (571 SE2d 477) (2002). In reaching its decision on narrow grounds in this case, however, the trial court neglected to resolve certain material inconsistencies between the officer's and Blakely's testimony relevant to the issues of whether she voluntarily consented to the search and the scope of the consent, and the trial court expressly acknowledged that there remained outstanding factual questions about "things that were said."[3] Only the trial court can make these credibility determinations. *State v. Brown*, 269 Ga. App. 875, 877 (605 SE2d 628) (2004). Accordingly, we decline Hogans's invitation to uphold the trial court's grant of his motion to suppress notwithstanding the erroneous legal basis for its ruling. See *State v. Roe*, 211 Ga. App. 129, 130 (2) (438 SE2d 186) (1993). Rather, we reverse the judgment and "remand[ ] to the trial court as the finder of fact to make the credibility decision it avoided earlier. . . ." (Citation and punctuation omitted.) Id. The trial court is directed to then reconsider the motion to suppress. See *Brown*, supra, 269 Ga. App. at 877; *Roe*, supra, 211 Ga. App. at 130.

*Judgment reversed and case remanded with direction. Andrews, P. J., and Barnes, J., concur.*

DECIDED NOVEMBER 20, 2009.

*Peter J. Skandalakis, District Attorney, Melissa L. Himes, Assistant District Attorney*, for appellant.
*Charles D. Graham*, for appellee.

---

[3] The trial court arguably found Blakely credible insofar as her testimony that the officer said he was going to "bring the dogs out" if she did not consent to a search. However, the trial court failed to address the officer's and Blakely's differing descriptions of the requests and responses leading up to Blakely's consent. Blakely and the officer also differed as to the scope of the consent. The officer testified that he asked for consent to search the vehicle and its contents. Blakely maintained that the officer asked to search the vehicle, but not the vehicle and its contents.