## A10A0426. CARTER v. THE STATE.
(692 SE2d 753)

MIKELL, Judge.

After a jury trial, Thomas William Carter was convicted of aggravated assault, two counts of simple battery, and two counts of aggravated battery. The jury also acquitted Carter of two counts of simple battery, terroristic threats, and one count of aggravated battery. On appeal, Carter argues that his convictions should be reversed for three reasons: (1) the state failed to prove that he did not act in self-defense; (2) the trial court failed to conduct the balancing test required by OCGA § 24-9-84.1 (a) (2) before ruling on the admissibility of a prior felony conviction; and (3) trial counsel was ineffective. We find no error and affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence. We neither weigh the evidence nor judge the credibility of

---

witnesses, but determine only whether the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[1]

So viewed, the record shows that on the evening of December 11, 2007, Carter visited his former girlfriend, Tammy Connor, who lived in a boarding house along with her housemates Alma Eaves and Stephen Cook. Connor testified that Carter was intoxicated and belligerent, and when she asked him to leave, he told her that "he'd leave when he got f-ing ready." Connor called the owner of the home, Sandra Anglin, and told her that Carter would not leave. Carter then took the phone and spoke nicely to Anglin, but after he hung up the phone, he grabbed Connor, punched her in the chest, and pushed her to the floor. Connor testified that Cook stepped between her and Carter and escorted Carter to the hallway to try to get him to calm down; that she called 911 while Cook talked to Carter; that she saw Carter stab Cook, and she became hysterical; that she saw Cook fall and Carter stab him a few more times; and that as she talked to the 911 operator, she heard Carter tell Cook that he was going to kill him.[2] The recording of the 911 call was introduced into evidence. Connor also recalled that after Carter stabbed Cook, he went into her bedroom and when he exited the bedroom, he was no longer wearing a shirt.

Officer D. K. Ablashi of the Cobb County Police Department responded to the 911 call, which reported a "stabbing in progress." Ablashi testified that when he arrived at the scene, the front door was open and he heard a female screaming; that when he entered the house, he saw Connor sitting on the floor and a male sitting in a pool of blood, while another male, Carter, shirtless and covered in blood, was standing over the bleeding victim. Ablashi further testified that Carter was holding something in his hand, which Ablashi ordered him to drop; and that he and another officer at the scene handcuffed Carter and cleared the residence. Ablashi noticed that Carter smelled of alcohol when he took him to the Cobb County Detention Center. There, Carter was examined by a nurse. Ablashi testified that Carter may have sustained some minor scratches.

Deputy Raymond Morrical of the Cobb County Sheriff's Office, who investigated the incident, testified that he patted down Carter at the scene and found a large black knife in his right front pocket and a small pocket knife in his left front pocket. Stephan Hammond, the paramedic who treated Cook at the scene, testified that Cook sustained six wounds, including a three- to four-inch laceration to

---

[1] (Citation omitted.) *Goss v. State*, 289 Ga. App. 734 (658 SE2d 168) (2008).

[2] Cook died the following month, but his death was not related to Carter's attack on him.

144

the back of his neck, puncture wounds on his arms and abdomen, and scratch-like wounds on his hands; that Cook lost a lot of blood; and that he was taken to Grady Hospital for treatment.

1. In his first enumerated error, Carter argues that his aggravated assault and aggravated battery convictions should be reversed because the state failed to prove that he did not act in self-defense when he stabbed Cook. We disagree.

> A person commits an aggravated battery when he or she "maliciously causes bodily harm to another by depriving him or her of a member of his or her body, by rendering a member of his or her body useless, or by seriously disfiguring his or her body or a member thereof." A person commits an aggravated assault when he or she assaults "with a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury."[3]

The state introduced photographs of Cook's injuries. Connor gave eyewitness testimony that Carter stabbed Cook with a knife repeatedly, and "[t]he testimony of a single witness is generally sufficient to establish a fact."[4]

Carter argues that the jury should have concluded that he acted in self-defense because he was older than Cook, weighed 30 to 40 pounds less than Cook, and because they were fighting before the stabbing occurred. But the question of whether Carter acted in self-defense was solely for the jury,[5] which obviously resolved the issue against Carter. "[Carter] in effect asks us to reweigh the evidence to place greater credence in [his] justification defense than did the jury[, but] [t]his court does not weigh the evidence or assess the credibility of witnesses."[6] Instead, utilizing the standard set forth in *Jackson v. Virginia*,[7] we determine whether the evidence, construed in a light most favorable to the verdict, was legally sufficient.[8] So construed, we find that the evidence here supported Carter's convictions.

2. Next, Carter argues that the trial court erred when it failed to

---

[3] (Punctuation omitted.) *Chalvatzis v. State*, 265 Ga. App. 699, 701 (1) (595 SE2d 558) (2004), citing OCGA §§ 16-5-24 (a), 16-5-21 (a) (2).

[4] OCGA § 24-4-8. See also *Burden v. State*, 290 Ga. App. 734, 735 (1) (a) (660 SE2d 481) (2008).

[5] See *Harris v. State*, 298 Ga. App. 708, 710 (1) (680 SE2d 693) (2009).

[6] (Footnotes omitted.) *O'Connor v. State*, 255 Ga. App. 893, 895 (1) (567 SE2d 29) (2002). Accord *Tahantan v. State*, 260 Ga. App. 861, 862 (581 SE2d 373) (2003).

[7] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[8] See *O'Connor*, supra.

balance the probative value of Carter's prior felony conviction for enticing a child for indecent purposes against its prejudicial effect. Again, we disagree.

Pursuant to OCGA § 24-9-84.1 (a) (2),

[f]or the purpose of attacking the credibility of a witness, or of the defendant, if the defendant testifies . . . [e]vidence that the defendant has been convicted of a crime shall be admitted if the crime was punishable by death or imprisonment of one year or more under the law under which the defendant was convicted if the court determines that the probative value of admitting the evidence substantially outweighs its prejudicial effect to the defendant.

In support of his position, Carter correctly argues that *Quiroz v. State*[9] requires the trial court to make express findings regarding the balancing test prescribed in the statute. We held in *Quiroz* that

[t]o give a "sensible and intelligent effect" to that part of OCGA § 24-9-84.1 (a) (2) requiring the trial court to balance the probity of a prior felony conviction against its prejudicial effect, we now require that such findings be made expressly. Factors to be considered include the kind of felony involved, the date of the conviction, and the importance of the witness's credibility.[10]

The record shows that Carter's counsel argued on two occasions that the prior conviction was more prejudicial than probative. In response, the trial judge stated, "I'm going to allow both of them.[11] . . . If he doesn't testify, they don't go in. Let me make that perfectly clear. If he doesn't testify, they don't go in, but if he does testify then it certainly goes highly to his credibility being an issue in this case." In its order denying Carter's motion for new trial, the trial court acknowledged that *Quiroz* requires findings on the record and explained that it made the required findings, stating as follows:

This 2003 felony charge of enticing a child for indecent purposes indicates a [d]efendant's attempt to touch someone in a criminal way, by an action that the [d]efendant instigates. In the present case the [d]efendant caused seri-

---

[9] 291 Ga. App. 423 (662 SE2d 235) (2008).

[10] (Footnotes omitted.) Id. at 428 (4).

[11] Carter also had a 2003 conviction for entering an automobile with intent to commit theft and criminal trespass.

ous injury to . . . Cook with a knife in a way that required touching in a situation that the [s]tate alleged was instigated by the [d]efendant. This conviction would have questioned the [d]efendant's testimony that . . . Cook was the aggressor and the admission of this evidence substantially outweighed any prejudicial effect.

Based on the record before us, we find that the trial court engaged in the required balancing test and made express findings in accordance with *Quiroz*.[12]

In *Miller v. State*,[13] we remanded a case for the entry of express findings on the record pursuant to OCGA § 24-9-84.1 (a) (2).[14] Quoting *Quiroz*, we explained that

[w]hen no express findings have been made as to this balancing test, this court can only guess whether the trial court has made the requisite determination. We therefore require that the trial court's findings be made expressly on the record to ensure compliance with the procedural safeguards provided under the statute.[15]

On remand, we directed the trial court as follows:

[i]f the trial court determines that the prior conviction was inadmissible after engaging in the balancing test required under OCGA § 24-9-84.1 (a) (2), then a new trial will be required. But, if the trial court determines that the prior conviction was admissible, a new trial will not be mandated, subject to appellate review for an abuse of discretion.[16]

It follows therefore that as long as the trial court makes express findings on this issue, even if made in an order on a motion for new trial, as was done here, the intent of OCGA § 24-9-84.1 is satisfied. In the instant case, these findings were made before Carter filed his notice of appeal, and had he wished to argue that the trial court abused its discretion, he could have done so on appeal, but that argument has not been raised. Accordingly, as we find that the trial court conducted the required balancing test and made express

---

[12] Supra.

[13] 298 Ga. App. 792 (681 SE2d 225) (2009).

[14] Id. at 796 (4).

[15] (Citation and footnote omitted.) Id. at 797 (4). See also *Abercrombie v. State*, 297 Ga. App. 522, 524 (1) (677 SE2d 719) (2009).

[16] (Citation omitted.) *Miller*, 298 Ga. App. at 797 (4).

findings on the record, this enumerated error fails.

3. In his last enumeration of error, Carter argues that he received ineffective assistance of counsel. Specifically, Carter maintains that trial counsel failed to introduce evidence that Cook had drugs in his system at the time of the incident and that counsel should have presented expert testimony that the drugs could have made Cook combative. Carter contends that trial counsel's failure to introduce this evidence severely undermined his justification defense.

As established in *Strickland v. Washington*,[17] "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[18]

> There are two components to the inquiry: First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. The *Strickland* Court set forth the appropriate test for determining prejudice: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[19]

"[A] trial court's findings that a defendant has been afforded effective assistance of counsel will be affirmed on appeal unless clearly erroneous."[20] We conduct a de novo review of the trial court's legal conclusions.[21]

---

[17] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[18] 466 U. S. at 686 (II).

[19] (Punctuation omitted.) *Miller v. State*, 285 Ga. 285, 285-286 (676 SE2d 173) (2009), citing *Strickland*, supra at 687 (III), 694 (III) (B).

[20] (Footnote omitted.) *White v. State*, 293 Ga. App. 241, 242 (1) (666 SE2d 618) (2008).

[21] *Robbins v. State*, 290 Ga. App. 323, 329 (4) (659 SE2d 628) (2008).

Offering no record citations, Carter argues that trial counsel should have introduced evidence from Cook's medical records, allegedly showing that Cook took mood-altering drugs such as methadone, Percocet, Soma, and Xanax. In the hearing on the motion for new trial, trial counsel testified that she learned that the victim had taken prescription drugs and investigated whether those drugs would cause violent behavior, but the medical records from the night in question showed that opiates and benzodiazepine were detected, but both were "unconfirmed." Trial counsel further testified that the most notable factor in Cook's records was the fact that he was given morphine an hour after the incident, which indicated to her that there could not have been high levels of harmful drugs in Cook's system. Dr. Matthew Bittner, an emergency room physician who was listed as the registering physician on Cook's medical records from the night of the incident, testified at the hearing on the motion for new trial that there was no way to determine from the medical records whether Cook was under the influence of opiates or barbiturates at the time that he was stabbed; that a patient suffering opiate withdrawal would suffer from vomiting, nausea, abdominal pain, and piloerection but would not be aggressive; and that Bittner would not have administered morphine to a patient who was under the influence of a variety of drugs or one suffering from opiate withdrawal.

Carter presented no evidence that Cook had taken drugs that would have made him act aggressively during the incident. Therefore, Carter's claim that counsel was ineffective for failure to introduce such evidence fails.[22] Carter's related argument that defense counsel rendered ineffective assistance of counsel by failing to introduce expert testimony connecting Cook's alleged drug use to his behavior also fails in the absence of evidence that such drugs were present in Cook's system. Therefore, as Carter has not shown that trial counsel's performance was deficient in this regard, his claim of ineffectiveness fails, as the failure to satisfy either prong of the two-part *Strickland* test is fatal to the claim of ineffective assistance of counsel.[23]

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED MARCH 25, 2010.

---

[22] See *James v. State*, 270 Ga. 675, 676 (2) (513 SE2d 207) (1999) (evidence of drug use excluded where the defense could not demonstrate how the use of drugs contributed to behavior of the victim that would have been relevant to the defendant's justification defense).

[23] *Smallwood v. State*, 296 Ga. App. 16, 21 (4) (673 SE2d 537) (2009).

*Justin J. Wyatt, Patricia G. Abbott*, for appellant.
*Patrick H. Head, District Attorney, Dana J. Norman, Erman J. Tanjuatco, Assistant District Attorneys*, for appellee.