## A10A0566. DELAROSA v. THE STATE.
### (695 SE2d 346)

MILLER, Chief Judge.

A Hall County jury convicted Joshua Delarosa of aggravated assault (OCGA § 16-5-21 (a)), aggravated battery (OCGA § 16-5-24 (a)), possession of a firearm during the commission of a felony (OCGA § 16-11-106 (b)), and possession of a pistol by a person under the age of 18 (OCGA § 16-11-132 (b)). Delarosa filed a motion for new trial, which the trial court denied. Delarosa now appeals, arguing that (1) the evidence was insufficient to support his convictions of aggravated assault, aggravated battery, and possession of a firearm during the commission of a felony; (2) he was entitled to a directed verdict of acquittal as to the foregoing offenses; (3) the trial court erred in denying his motion to suppress his statements to police; and (4) his trial counsel was ineffective. Finding no reversible error, we affirm.

Viewed in the light most favorable to the verdict (*Rankin v. State*, 278 Ga. 704 (606 SE2d 269) (2004)), the record shows that Delarosa and John Travis Wills did not get along. According to Wills,

---

[6] *Coastal Marshlands Protection Committee v. Center for a Sustainable Coast*, 286 Ga. App. 518, 520 (1) (649 SE2d 619) (2007).

on November 11, 2005, Delarosa threatened him over the phone while he was in his car with his girlfriend, Stephanie McBroom. That evening, Delarosa and Kacy Gladney convinced Kacy's brother, Kalen, to drive them and another friend, Dustin Thomas, over to Fork Road. According to Kacy, Delarosa wanted to find Wills and fight him. The four men stopped at some friends' house on Fork Road, and when they saw Wills drive by, Delarosa instructed Kalen to follow him.

Wills testified that he and McBroom were driving down Fork Road on the way to his mother's house when another car came flying up behind them. Wills testified that he believed Delarosa was in the car and pulled over because he thought there was going to be a physical altercation, and "I didn't want to bring the trouble back to my mother's house." Wills stated that before he managed to get all the way out of the car, Delarosa shot him in the back of his leg and shot him again in the abdomen once he exited the vehicle.

At trial, Delarosa testified that he asked Kalen to follow Wills' car because he wanted to talk to Wills to "settle the situation before it got out of hand" and he only shot Wills because he saw Wills pull a baseball bat out of the car and was scared. On direct examination, Wills testified that he was not holding anything in his hands when he exited his car but that he threw a baseball bat out of the window after he got back into the car. But when asked on cross-examination whether he "stopped the car that night and . . . got out of the car with a ball bat to deal with Mr. Delarosa because you were mad at him," Wills responded, "I don't know." McBroom testified that Wills was not holding a bat when he got out of the car but admitted telling an investigating officer that Wills got out of the car with a baseball bat. Kalen and Kacy testified that, although Wills appeared to be holding a bat when exiting the car, Delarosa shot him before he could have raised it, and Delarosa then picked up the bat that Wills dropped and used it to smash Wills' back windshield

Following the shooting, Wills drove to his mother's house, and McBroom called 911. Wills was transported to the hospital, and, as a result of his injuries, his spleen was removed.

1. Delarosa claims that the evidence presented at trial was insufficient to support his convictions of aggravated assault, aggravated battery, and possession of a firearm during the commission of a felony. We disagree.

Upon this Court's review of a criminal defendant's challenge to the sufficiency of the evidence supporting a conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution,

> any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

(Punctuation and emphasis omitted.) *Robinson v. State*, 296 Ga. App. 561 (675 SE2d 298) (2009), citing *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979). "The jury, not this Court, resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from basic facts to ultimate facts." Id. at 561-562.

Delarosa contends that the evidence was insufficient to support the challenged convictions because Wills gave conflicting testimony regarding how long he had a baseball bat in his car, and both McBroom and Wills gave inconsistent testimony as to whether Wills was holding the bat when he got out of his car before the shooting. Delarosa contends that Wills and McBroom were impeached and "neither one of them could rationally be believed." The question of "whether a witness is impeached is a jury question, and even if the jury determines that a witness has been impeached, credibility remains a matter for that jury." *Richard v. State*, 281 Ga. 401, 405 (1), n. 4 (637 SE2d 406) (2006). Here, the jury would have been entitled to credit Wills and McBroom's testimony that Wills was shot when he emerged unarmed from his vehicle. Such testimony, together with medical testimony that Wills' spleen had to be removed as a result of his injuries, supported Delarosa's convictions of aggravated assault, aggravated battery, and possession of a firearm during the commission of a felony. OCGA §§ 16-5-21 (a), 16-5-24 (a), 16-11-106 (b).

Even if the jury discounted Wills and McBroom's testimony and concluded that Wills was, in fact, holding a baseball bat when he got out of the car, the disputed convictions still would be authorized. While evidence that Wills held a bat may have entitled Delarosa to assert a justification defense, the evidence did not demand a finding that Delarosa justifiably shot Wills in self-defense. To the contrary, based on the evidence presented, including Wills' testimony that Delarosa had threatened him earlier in the day, Kacy's testimony that Delarosa wanted to fight Wills and instructed Kalen to pursue Wills' vehicle, and Kalen and Kacy's testimony that Wills did not have an opportunity to raise the bat and Delarosa used the bat to smash Wills' back windshield, the jury was authorized to conclude Delarosa was the aggressor in the encounter with Wills or, at a minimum, engaged in combat by agreement with him. *In the Interest of S. S.*, 224 Ga. App. 301 (480 SE2d 327) (1997) (jury was entitled to decide that juvenile did not attack victim in self-defense but rather was the aggressor or stood her ground to engage in mutual combat). Such a conclusion would defeat a justification defense. OCGA § 16-3-21 (b).

2. Delarosa argues that the trial court erred in denying his motion for a directed verdict of acquittal on the charges of aggravated assault, aggravated battery, and possession of a firearm during the commission of a felony. Since "[t]he standard of review for the denial of a motion for directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence," (*Tahantan v. State*, 260 Ga. App. 861 (581 SE2d 373) (2003) (citation and punctuation omitted)), we reject Delarosa's claim of error. See Division 1, supra.

3. Delarosa contends that the trial court erred in denying his motion to suppress statements he made during an interview with police in which he, among other things, denied involvement in an altercation with Wills. Delarosa argues that the statements resulted from an unlawful arrest.[1] We find no reversible error.

> On appeal from a ruling on a motion to suppress, we must construe the evidence most favorably to affirming the trial court's factual findings and judgment. We accept the trial court's factual and credibility determinations unless they are clearly erroneous, and the factual findings will be upheld if they are supported by any evidence. The trial court's application of the law to undisputed facts, however, is subject to a de novo standard of review.

(Citations omitted.) *State v. Hogans*, 301 Ga. App. 261 (687 SE2d 230) (2009).

At the pretrial hearing on the suppression motion, Officer Michael Todd Casper of the Hall County Sheriff's Department testified that he was on duty on November 11, 2005, when he heard a "be on the lookout" ("BOLO") notice for a Dodge Neon connected with a shooting in the Sardis area. When asked whether he recalled a BOLO being issued for Delarosa, however, Casper responded that he did not recall a particular name. Casper stated that the vehicle in question was believed to be in the Shallowford Drive area and when he was heading in that direction, he learned that other officers had located the vehicle there. According to Casper, when he arrived at Shallowford Drive around 8:00 p.m., two other officers were on the scene, and Delarosa and three other individuals were standing there in handcuffs. At the direction of a superior officer, Casper transported two of the individuals to the sheriff's office, and another officer transported the other two.

Officer John Robertson of the Gainesville Police Department

---

[1] Delarosa concedes that he was advised of his *Miranda* rights and that his statements were voluntary.

testified that while on duty at a high school football game on November 11, 2005, he heard a BOLO for a vehicle and for Delarosa in connection with a shooting. When asked what time he heard the BOLO, Robertson stated: "I would have to refer back to some reports or something. It was . . . 9:00 or 10:00 . . . something like that. It was on a Friday night is all I know."

The trial court declined to rule on the suppression motion prior to the commencement of the trial, stating that it wanted to hear other evidence in the case. At trial, McBroom testified that when she called 911 and reported Wills' injuries, she identified Delarosa as the shooter. Kalen testified that following the shooting, he and the other men drove Delarosa home, after first stopping at Kalen and Kacy's parents' house. According to both brothers, upon their arrival at Delarosa's house, police officers pulled up behind them, arrested all four men, and took them to the police station. Subsequently, the trial court denied Delarosa's motion to suppress, explaining:

> Ms. McBroom indicated that she called 911 and identified Mr. Delarosa as the shooter. And I assume — and I don't think there's any evidence to contradict it — that that's the only reason why law enforcement would be pulling that car over and arresting those folks was because they had — they had been notified of the shooting, which I assume the 911 call would be the first notification they had of that. And so I would find that there's probable cause for the detention of Mr. Delarosa, which made it a lawful arrest. . . .

Probable cause exists "if, at the moment the arrest is made, the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the accused had committed or was committing an offense." (Punctuation and footnote omitted.) *State v. Tyson*, 273 Ga. 690, 693 (3) (544 SE2d 444) (2001). If the facts upon which a police lookout is based are sufficient to establish probable cause, a police officer receiving the lookout may rely on the same in arresting a suspect since probable cause "can rest upon the collective knowledge of the police when there is some degree of communication between them. . . ." (Citation omitted.) *Burgeson v. State*, 267 Ga. 102, 105 (3) (a) (475 SE2d 580) (1996); *Humphreys v. State*, 287 Ga. 63, 74 (7) (694 SE2d 316) (2010). But an arrest based on a lookout issued in the absence of probable cause is unlawful. See *Whiteley v. Warden*, 401 U. S. 560, 568-569 (II) (91 SC 1031, 28 LE2d 306) (1971) (arrest made in reliance on radio bulletin issued by officer who had obtained arrest warrants for defendant without establishing probable cause was unlawful).

Even assuming the trial court properly could have inferred that a BOLO was issued as a result of McBroom's 911 call and that Delarosa and his friends were picked up based on that BOLO, the record indicates only that when McBroom called 911, she stated that she needed an ambulance because her boyfriend had been shot and identified Delarosa as the shooter. The State implicitly acknowledges that this minimal information was insufficient to establish probable cause, arguing, in reliance on *King v. State*, 258 Ga. App. 872 (575 SE2d 679) (2002), that the police needed only a reasonable articulable suspicion of criminal activity to detain Delarosa at the sheriff's office until they could establish probable cause by interviewing Wills. In *King*, we held that a police officer's initial stop of two individuals in response to a BOLO issued in connection with an armed robbery was justified by a reasonable suspicion of criminal wrongdoing and that, under the circumstances, police did not act unreasonably by detaining the suspects in handcuffs in a patrol car for almost 30 minutes while they sought to confirm the suspects' involvement in the crime. Id. at 874-875 (1). Pretermitting whether the State could establish that the BOLO here was sufficiently particularized to warrant an investigative stop,[2] unlike the suspects in *King*, Delarosa was transported to the sheriff's office. At that point, Delarosa was subject to an arrest for Fourth Amendment purposes, and probable cause was required. *Hayes v. Florida*, 470 U. S. 811, 816 (105 SC 1643, 84 LE2d 705) (1985) (Fourth and Fourteenth Amendments apply with full force when "police, without probable cause or a warrant, forcibly remove a person from his home or other place in which he is entitled to be and transport him to the police station, where he is detained although briefly, for investigative purposes").

When a defendant's statement arises from the exploitation of an unlawful arrest, the statement is subject to the exclusionary rule developed under the Fourth Amendment. See *State v. Stringer*, 258 Ga. 605 (372 SE2d 426) (1988). In determining whether a statement is sufficiently attenuated from an unlawful arrest to be admissible, a court must consider several factors, including the presence of intervening circumstances. *Dunaway v. New York*, 442 U. S. 200, 218 (III) (99 SC 2248, 60 LE2d 824) (1979); *State v. Harris*, 256 Ga. 24, 26 (2) (343 SE2d 483) (1986). We need not decide whether the State provided sufficient evidence of attenuation here by, for example,

---

[2] Compare *Faulkner v. State*, 277 Ga. App. 702, 704 (1) (627 SE2d 423) (2006) ("Particularized alerts issued by police officers for specifically described vehicles possibly involved in criminal activity have long served as a legitimate basis for investigatory stops") (citations omitted) and *Vansant v. State*, 264 Ga. 319, 320-321 (2) (443 SE2d 474) (1994) (police officer who responded to radio dispatch lacked reasonable articulable suspicion necessary to stop defendant when officer knew only that suspect vehicle was a white van).

showing that probable cause was acquired before police interviewed Delarosa because we conclude that the trial court's error, if any, in denying Delorosa's motion to suppress was harmless.

An exception to the exclusionary rule permits prosecutors to introduce illegally obtained evidence to impeach the credibility of the defendant's own testimony. *James v. Illinois*, 493 U. S. 307, 312 (II) (110 SC 648, 107 LE2d 676) (1990).[3] Here, Delarosa elected to testify, and while he admitted involvement in an altercation with Wills, he claimed that he felt he had no choice but to shoot Wills in self-defense. Under the circumstances, Delarosa's prior inconsistent statements denying involvement in an altercation with Wills were admissible for purposes of impeachment even if they resulted from an illegal arrest. As such, the prosecutor properly referred to them in cross-examining Delarosa. While the two officers who interviewed Delarosa were permitted to testify regarding Delarosa's statements during the State's case-in-chief and would not have been allowed to do so had the motion to suppress been granted, the State could have called the officers as rebuttal witnesses. Since the jury inevitably would have learned of Delarosa's statements even if the trial court had granted the motion to suppress, we conclude that any error in allowing the State's witnesses to testify regarding such statements during the State's case-in-chief was harmless beyond a reasonable doubt. *Ramirez v. State*, 279 Ga. 569, 575 (6) (619 SE2d 668) (2005).

4. Delarosa contends that his trial counsel was ineffective in failing to request a curative instruction after the prosecutor elicited testimony reflecting his bad character. We are not persuaded.

On appeal from a trial court's decision on an ineffective assistance of counsel claim, "[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Citation and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003). To establish ineffective assistance of counsel, a criminal defendant "must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different." (Citation and punctuation omitted.) *Matthews v. State*, 284 Ga. 819, 821-822 (4) (672 SE2d 633) (2009). "In evaluating an attorney's performance, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (Citation and punctuation omit-

---

[3] See also *Kansas v. Ventris*, ___ U. S. ___ (129 SC 1841, 1847 (II) (B), 173 LE2d 801) (2009); *United States v. Havens*, 446 U. S. 620, 627-628 (II) (100 SC 1912, 64 LE2d 559) (1980).

ted.) *Watson v. State*, 299 Ga. App. 702, 704 (1) (683 SE2d 665) (2009).

While cross-examining Thomas, the prosecutor asked him if he and Delarosa were still friends, and Thomas responded: "I am not allowed to have contact with him." Thomas further stated that his mother said he would be "kicked out" of the house if he had contact with Delarosa. Delarosa's counsel then moved for a mistrial, which the trial court denied. While Delarosa claims that his trial counsel also should have requested that the trial court give a curative instruction, the record, which does not include a transcript from a hearing on the new trial motion, contains no testimony from trial counsel concerning his reasons for not doing so. Under the circumstances, Delarosa has failed to overcome the strong presumption that his trial counsel's performance was reasonable, and, accordingly, his ineffective assistance of counsel claim fails. See *Dyer v. State*, 278 Ga. 656, 660 (7) (604 SE2d 756) (2004) (defendant failed to prove that his trial counsel performed deficiently by failing to move for a mistrial or to strike alleged hearsay testimony because such decision could have been strategic and defendant failed to question trial counsel about it).

*Judgment affirmed. Phipps, P. J., and Johnson, J., concur.*

DECIDED MAY 7, 2010.

*Gina M. Grady*, for appellant.
*Lee Darragh, District Attorney, John D. West, Jr., Assistant District Attorney*, for appellee.