[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14483
Non-Argument Calendar
_____

D.C. Docket No. 6:16-cv-00147-JRH-GRS

CHARLES R. RANKIN,

Plaintiff-Appellant,

versus

BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA,
CHIEF LAURA MCCULLOUGH,
SGT. HARRY JONES,
OFFICER KATE SULLIVAN,
CPT. TERRY BRILEY,
Each in his/her official and individual capacities,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(April 26, 2018)

Before ED CARNES, Chief Judge, JILL PRYOR, and FAY, Circuit Judges.

PER CURIAM:

Officers of the Georgia Southern University Division of Public Safety arrested Charles Rankin at a tailgate outside the football stadium for scuffling with a drunken attendee. Rankin filed suit against those officers. The district court ruled that the officers were entitled to qualified immunity and dismissed Rankin's complaint. This is his appeal.

Rankin is a Corporal in the Georgia State Patrol. He took his ten-year-old son to GSU on gameday to see the area and meet some friends. Rankin was off-duty but notified Major McCullough, the Chief of Police for the GSU Division of Public Safety, that he would be in attendance and carrying a firearm.

Rankin and his son were at the tailgate when Stuart Smith, noticeably drunk, stumbled onto the scene. Rankin asked Smith to leave because he was making people uncomfortable. Smith refused and began cussing in front of Rankin's son. Rankin told Smith that he and several people at the tailgate were off-duty law enforcement, so "it would be in his best interest" to leave. Smith struck Rankin, and a scuffle ensued. Some attendees alerted police to the situation, and seconds later, Sergeant Jones and Officer Sullivan arrived.[1] The officers found Rankin and Smith on the ground, and Jones pepper sprayed them while ordering them to break

---

[1] Jones and Sullivan are GSU police officers. Earlier that day, they had encountered a noticeably intoxicated Smith and instructed him to leave the area of a live radio broadcast.

it up.  Rankin released Smith and identified himself as an off-duty trooper.  Rankin was arrested for affray and booked in the county jail.

After Rankin's release, another GSU officer, Captain Briley, obtained an arrest warrant for Rankin "based on what the officers had told [him]."  Rankin was again booked on an affray charge, which was ultimately dropped.

Rankin filed suit and asserted 42 U.S.C. § 1983 claims against the officers for false arrest, false imprisonment, malicious prosecution, and supervisory liability.[2]  The officers moved to dismiss and argued that they were entitled to qualified immunity.  The district court granted that motion, and Rankin appealed.

We review de novo the dismissal of Rankin's complaint.  Hardy v. Regions Mortg., Inc., 449 F.3d 1357, 1359 (11th Cir. 2006).  To pass muster, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quotation marks omitted).  We accept well-pleaded facts and draw all reasonable inferences in the light most favorable to Rankin.  See Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002).  We need not credit "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts."  Oxford Asset Mgmt. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002).

---

[2] Rankin also sued the Board of Regents of the University System of Georgia, but he concedes that the Eleventh Amendment bars his claims against the Board.

Rankin contends that the district court erred by dismissing his false arrest claim against Jones and Sullivan. "An arrest without a warrant and lacking probable cause violates the [Fourth Amendment]." Brown v. City of Huntsville, 608 F.3d 724, 734 (11th Cir. 2010). Probable cause exists "where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." Id. To receive qualified immunity, however, an officer needs only "arguable probable cause," which exists if "reasonable officers in the same circumstances and possessing the same knowledge as the [officers] could have believed that probable cause existed to arrest [Rankin]." Id. "Whether an officer possesses probable cause or arguable probable cause depends on the elements of the alleged crime and the operative fact pattern." Id. at 735. The officers arrested Rankin for affray, which is "the fighting by two or more persons in some public place to the disturbance of the public tranquility." Ga. Code Ann. § 16-11-32.

Rankin argues that the officers lacked arguable probable cause to arrest him because intent is an element of affray, see O'Connor v. State, 567 S.E.2d 29, 31 (Ga. Ct. App. 2002), and the officers had no reason to believe he intended to fight Smith. But the officers saw Rankin and Smith scuffling on the ground, which provides some evidence that Rankin intended to do so. See United States v.

Martinez, 96 F.3d 473, 478 n.7 ("'[A]cts indicate the intention' is an old maxim.") In any event, Rankin's argument fails because "[n]o officer has a duty to prove every element of a crime before making an arrest." Jordan v. Mosley, 487 F.3d 1350, 1355 (11th Cir. 2007).

Rankin next argues that the officers lacked arguable probable cause because all the evidence indicated that Smith was the initial aggressor and that Rankin acted in self-defense. Neither fact affects the probable cause inquiry. For purposes of affray, it doesn't matter if Smith struck first. See O'Connor, 567 S.E.2d at 32 ("O'Connor claims that it was error for the trial court to instruct the jury that it was irrelevant who struck the first blow. This claim is without merit."). And whether Rankin acted in self-defense goes to an affirmative defense, not to probable cause. Officers on the scene need not investigate affirmative defenses, see Jordan, 487 F.3d at 1356–57, and the existence of an affirmative defense does not vitiate probable cause where the officers witness seemingly unlawful conduct, see Morris v. Town of Lexington, 748 F.3d 1316, 1325 (11th Cir. 2014).

Rankin also argues that the officers lacked arguable probable cause because he was acting in his official capacity at the time of the altercation. We need not decide if he was because it is beside the point. We determine probable cause from the perspective of a reasonable officer in Jones' and Sullivan's position. See Brown, 608 F.3d at 734. From that vantage, an officer would have observed two

5

men in plain clothes fighting on the ground at a crowded tailgate.[3]  Rankin's status as an off-duty trooper does not change those facts.  For those reasons, an officer could reasonably believe that probable cause existed to arrest Rankin for affray.[4]

Rankin next contends that the district court erred by dismissing his malicious prosecution claim against Briley.[5]  In the qualified immunity context, we apply the same arguable probable cause standard to malicious prosecution claims that we do to false arrest claims.  See Grider v. City of Auburn, 618 F.3d 1240, 1257 n.25 (11th Cir. 2010).  Rankin asserts that Briley committed malicious prosecution by obtaining the arrest warrant without arguable probable cause.  But his complaint alleges that Briley sought the warrant "based on what [Jones and Sullivan] told [him]."  Under the fellow officer rule, Briley was entitled to rely on Jones' and Sullivan's statements.  See Terrell v. Smith, 668 F.3d 1244, 1252 (11th Cir. 2012)

---

[3] Rankin asserts that the district court "falsely describe[d] [his] allegations" by stating that the officers observed him and Smith "fighting on the ground."  But that is the only reasonable inference one can draw from the relevant part of the operative complaint:

> Smith drew back as if to strike Cpl. Rankin, and at least some sort of contact was made by Smith on Rankin.  Cpl. Rankin responded defensively to Smith's attack, or alternatively began to effectuate an arrest of Smith.  Cpl. Rankin and Smith ended up on the ground a short distance from the gathering area.

[4] Our conclusion that the officers had arguable probable cause to arrest Rankin disposes of his false arrest claim as well as his false imprisonment claim.  See May v. City of Nahunta, 846 F.3d 1320, 1329 (11th Cir. 2017) ("In light of our finding that Officer Allen had arguable probable cause to seize [Plaintiff] . . . we affirm the district court's grant of summary judgment in favor of Officer Allen on [Plaintiff's] § 1983 false imprisonment claim.").

[5] Rankin asserted a malicious prosecution claim against McCullough but did not allege that she was involved in obtaining the arrest warrant.  As a result, his malicious prosecution claim against McCullough fails.  See Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (noting that § 1983 liability must be premised on a defendant's personal misconduct).

(noting that "the collective knowledge of the investigating officers [may] be imputed to each participating officer").  The arrest warrant was based on arguable probable cause for the same reasons that Jones and Sullivan had arguable probable cause to arrest Rankin.

Finally, Rankin contends that the district court erred by dismissing his supervisory liability claim against McCullough.  A supervisor is liable for a subordinate's conduct "when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." Cottone, 326 F.3d at 1360.  Rankin did not allege that McCullough participated in the alleged unconstitutional conduct, so he must show a causal connection between her actions and the alleged constitutional violations. Id.

Rankin argues that McCullough "maintained policies or customs exhibiting a deliberate indifference to his constitutional rights," which is one way of proving the requisite causal connection. See id.  But "[a] single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several [subordinates]." Craig v. Floyd County, 643 F.3d 1306, 1311 (11th Cir. 2011).  Rankin's claim fails because most of the allegations supporting it are conclusory, and to the extent some are based on facts, they are limited to his own experience and as a result do not suggest a policy or custom of deliberate

indifference to constitutional rights.  See id.; see also Jaharis, 297 F.3d at 1188

("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions

masquerading as facts will not prevent dismissal.").

**AFFIRMED.**