**THIRD DIVISION
ELLINGTON, P. J.,
ANDREWS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**January 31, 2018**

# In the Court of Appeals of Georgia

A17A1761. BENNING v. THE STATE.

RICKMAN, Judge.

Dantory Eugene Benning was charged with eight offenses stemming from an alleged brutal assault of his live-in girlfriend. He was tried by a jury, convicted, and sentenced on two counts of aggravated sodomy and one count each of family violence aggravated assault, family violence battery, terroristic threats, and family violence simple battery.[1] Benning was sentenced to two life sentences plus twenty-seven years in confinement. On appeal, Benning contends that the trial court erred by admitting evidence of prior sexual assaults. For reasons that follow, we affirm.

---

[1] Benning was acquitted of one count of aggravated sexual battery and the two counts of family violence aggravated assault were merged for sentencing purposes.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). So viewed, the evidence showed that in July 2012, Benning moved in with his girlfriend (the victim), who lived with her grandmother and her uncle. On August 23, Benning informed the victim that she could no longer drive her car, he would take her to work and back, she would not be allowed to go anywhere else, and if she did not comply, he would hurt one of her family members. As an example, he threatened to cut her older sister's face from ear to ear.

The next day, Benning picked the victim up from work and they went to the store, where she talked to her male cousin. Benning became angry because he had not given her permission to speak to him. While driving home, Benning slapped her on the cheek, leaving a welt, and told her that she needed to take him more seriously. After they returned home, the victim went to bed and fell asleep. She woke up at approximately 11:00 p.m. when Benning started choking her. He then pulled her by the neck across the bed and punched her in the back "real hard" about twenty times. Over the next few hours, Benning beat her with a USB cord on her breast and bottom, resulting in red marks, bruises, and swelling. He choked her until she passed out and when she woke up, he was laughing. Benning forced her to have oral sex until she

threw up on him; he then put her face in the vomit and made her eat it. Next, Benning forced her to have anal sex and then alternated between forcing her to have oral sex and anal sex. The victim testified that Benning also put a broom in her anus three times. During this lengthy assault, Benning threatened to harm the victim's family members in various ways, saying he would put his penis down the throat of her one-year-old niece, shove peanuts down the throat of her nephew with a peanut allergy, and "taze" two of her nephews who had seizures. At approximately 4:00 a.m., Benning made her take a shower to clean everything off of her. The victim testified that she did not consent to oral or anal sex with Benning that night and that she was afraid to scream and have her grandmother or uncle come in the room because she did not know what Benning would do to her or to them.

The next day at work, the victim called her sister and told her that Benning had almost killed her and that she needed to find a way to get him away from the house. The victim also told two of her co-workers what had happened. The victim's sisters took her to the Covington Police Department, where she spoke to an officer who observed that "[s]he was very scared of [Benning]" and recommended that she go to the hospital. Another officer observed that the victim had red welts on her breast area and a few welts on her back area. On August 25, the victim went to the Newton

Medical Center, complaining that she was sexually assaulted, anally raped, assaulted with a USB cord, punched, and choked. After waiting over four hours without being seen by a physician, the victim left. She returned to the hospital the next day and was examined by a physician who observed bruising on her back and noted that the victim had tenderness on her spine and over her chest wall in the breast area.

The State presented evidence from two witnesses who testified that they had previously been sexually assaulted by Benning. In October 2005, at a military base in Texas, Benning drove a female service member to a party where she became extremely intoxicated. Benning agreed to take her back to the barracks and helped her up the stairs and into the bed. She felt nauseous and "started blacking out." As she drifted in and out of consciousness, she noticed that Benning was touching her and taking off her clothes. She asked him what he was doing and told him "[w]e are not doing that." Benning then penetrated her and she said, "no." He did not stop and when she tried to push him off, he pulled her back and entered her even harder. She testified that she never indicated to Benning that she wanted to have a sexual relationship with him. An army investigator assigned to the case interviewed Benning, who admitted to having sexual intercourse with the female service member,

stating that he took advantage of her because she was intoxicated and he was "thinking with his dick."

In October 2010, Benning went to visit a former girlfriend. She got upset when he decided to leave, and in response, Benning punched her in the side of the face and forced her to have vaginal intercourse, while continuing to beat her in the face, head, and back. He also forced her to have anal sex and oral sex. When she vomited during oral sex, he forced her to eat the vomit. Benning alternated between vaginal penetration and anal penetration, and after he finished, he made her clean herself. Benning then took her to his mother's house, where he lived. When they arrived, "it was sex again," and she was too scared to resist him. She was again told to clean up and while doing so, she felt weak and fell. When she could not get up as Benning instructed, he punched her in the chest. Shortly thereafter, Benning's mother returned to the house and ultimately called the former girlfriend's mother to come and take her home.

Approximately a year later, the former girlfriend met Benning in a parking lot to return books that belonged to him. She tried to put the books through the car window, but Benning reached into the car, opened the door, and pulled her out. She tried to walk away from him, but he caught her and pulled her back into the car,

hitting her head on the door frame. As Benning started to drive, she passed out and does not recall if she jumped or was pushed from the car. She later woke up in a house where Benning was staying and he was "having sex" with her. Her next memory was being in a hospital, where she identified Benning as the person who had caused her injuries.

Benning testified that he enjoys "hard core" or "kinky" sex. When asked about the encounter with the female service member, Benning testified that he did not intentionally have sex without her consent and that he stopped as soon as she asked. And as to the first incident with his former girlfriend, Benning testified that she got upset when he told her he had cheated on her, and then he got upset. According to Benning, they made up and had vaginal, anal, and oral sex before going to his house. When asked about the second incident involving his former girlfriend, Benning testified that after he dragged her back into the car, they were arguing while he was driving, and she jumped out of the car. He then became furious and hit her in the face twice and kicked her in the leg before driving her to the hospital.

With respect to the charged offenses here, Benning admitted that he got angry at the victim when she spoke to her cousin in the store without introducing him and that he slapped her in the car because she kept talking after he told her to be quiet.

Benning testified that he got angry again later that night when he discovered that she had eaten some of his food. Shortly thereafter, he woke her up and initiated vaginal, oral, and anal sex. They then took the sheet off the bed because she had spit up during oral sex, and they cleaned up. Benning testified that after the victim had showered, he began to verbally abuse her and hit her with a USB cord. Benning denied forcing her to have sex or making her eat her vomit, but admitted he threatened to do so. He testified that he had put a broom in her anus once before, but did not do so that night.

After he was convicted and sentenced, Benning moved for a new trial, asserting, inter alia, that the verdict was contrary to the evidence and arguing that the trial court erred by admitting evidence of prior sexual assaults. After considering briefs submitted by both parties, the trial court denied the motion for new trial on all grounds. Benning appeals his convictions.

On appeal, Benning's sole challenge is to the trial court's admission of evidence of the prior sexual assaults. He argues that the evidence was not necessary to prove an essential element of any charged crime and that the prejudicial effect of the evidence substantially outweighed any probative value. We will overturn a trial court's decision to admit evidence of prior sexual assaults only where there is a clear

abuse of discretion. See *Steele v. State*, 337 Ga. App. 562, 566 (3) (788 SE2d 145) (2016).

The State sought to admit evidence related to Benning's prior sexual assaults under three provisions of Georgia's new Evidence Code: OCGA §§ 24-4-413, 24-4-404 (b), and 24-4-403. OCGA § 24-4-413 (a) provides that "[i]n a criminal proceeding in which the accused is accused of an offense of sexual assault, evidence of the accused's commission of another offense of sexual assault shall be admissible and may be considered for its bearing on any matter to which it is relevant." The term "offense of sexual assault" in this Code section includes rape[2] and aggravated sodomy.[3] OCGA § 24-4-413 (d) (1).

In sexual assault cases, the provisions of OCGA § 24-4-413 (a) supersede the provisions of OCGA § 24-4-404 (b).[4] See *Steele*, 337 Ga. App. at 566 (3), n.5.

---

[2] A person commits the offense of rape when he has carnal knowledge (any penetration of the female sex organ by the male sex organ) of a female forcibly and against her will. OCGA § 16-6-1 (a) (1).

[3] A person commits the offense of aggravated sodomy when he or she commits sodomy (any sexual act involving the sex organs of one person and the mouth or anus of another) with force and against the will of the other person. OCGA § 16-6-2 (a) (1), (2).

[4] OCGA § 24-4-404 (b) provides that "[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action

Accordingly, we consider whether the trial court clearly abused its discretion in admitting evidence of the prior sexual assaults under OCGA § 24-4-413, and we need not address the admissibility of the evidence under OCGA § 24-4-404 (b). See *Latta v. State*, 341 Ga. App. 696, 699 (2) (802 SE2d 264) (2017).

The language of OCGA § 24-4-413 (a) was intended to create a "rule of inclusion," with a strong presumption in favor of admissibility as it provides that such evidence "shall be admissible." *Steele*, 337 Ga. App. at 566 (3). Thus, the State can seek to admit evidence under this provision for any relevant purpose, including propensity. *Dixon v. State*, 341 Ga. App. 255, 258 (1) (800 SE2d 11) (2017). "'[R]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401.

Evidence of the prior sexual assaults was relevant to show Benning's intent, which was put in issue when Benning entered a plea of not guilty. See *Olds v. State*, 299 Ga. 65, 72 (2) (786 SE2d 633) (2016). Such a plea requires the State to prove

in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

9

each and every element of the crimes charged, and "[a] culpable state of mind – intent or criminal negligence – is an essential element of every crime." Id. Moreover,

> evidence that an accused committed an intentional act generally is relevant to show – the evidence, in other words, has *some* tendency to make more or less probable – that the same defendant committed a similar act with the same sort of intent, especially when the acts were committed close in time and in similar circumstances.

(Emphasis in original.) Id. Evidence of the prior sexual assaults, which required the same sort of intent as required to prove the sexual assault crimes charged here, was therefore "relevant" as required by OCGA § 24-4-413 (a). See id.; *Kritlow v. State*, 339 Ga. App. 353, 355 (2) (793 SE2d 560) (2016) (trial court correctly ruled that prior sex crimes evidence was relevant to issue of intent). Because "the evidence was admissible to prove intent, we need not consider whether it was also admissible for other reasons." *Powell v. State*, 332 Ga. App. 437, 440 (2) (773 SE2d 399) (2015).

Relevant evidence introduced under OCGA § 24-4-413 (a) may, however, be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." OCGA § 24-4-403; see *Jackson v. State*, 342 Ga. App. 689, 690-91 (805 SE2d 457) (2017)

10

(trial court must consider balancing test of OCGA § 24-4-403 when considering the admissibility of prior sexual offenses). "This determination lies within the discretion of the trial court and calls for a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." (Punctuation omitted.) *Eubanks v. State*, 332 Ga. App. 568, 570 (1) (774 SE2d 146) (2015), citing *United States v. Perez*, 443 F3d 772, 780 (II) (11th Cir. 2006).

The prior sexual assaults were sufficiently similar to the charged sexual assaults. Benning took advantage of the female service member by having sexual intercourse with her when she was so intoxicated that she could not stand up and was drifting in and out of consciousness. When Benning got upset with his former girlfriend, he beat her while repeatedly forcing her to have vaginal, anal, and oral sex, ultimately forcing her to vomit and then making her eat the vomit. A year later, Benning forced the same woman into a car, and after she jumped from or was pushed out of the car and was barely conscious, he "ha[d] sex with her." The charged sexual assaults began when the victim was asleep and Benning was angry and involved many of the same non-consensual acts inflicted on Benning's former girlfriend. Thus, the manner of abuse was similar and "these similarities make the other offense[s]

11

highly probative with regard to the defendant's intent in the charged offense[s]." (Citations and punctuation omitted.) *Eubanks*, 332 Ga. App. at 570 (1).

As for prosecutorial need, in the face of Benning's claims that the sexual acts were consensual, the State was able to use the evidence to bolster the credibility of the victim by demonstrating that her circumstances were not unique. See *Robinson v. State*, 342 Ga. App. 624, 635 (4) (a) (805 SE2d 103) (2017) (evidence of defendant's prior offense of sexual assault was relevant to disprove his claim that the victim's allegation of a forced sexual encounter was fabricated); *Kritlow*, 339 Ga. App. at 356 (2) (evidence that Kritlow had committed similar sexual assaults was relevant because it "had the tendency to bolster the credibility of the victim by demonstrating that her circumstances were not unique") (citations and punctuation omitted). In addition, the prior sexual assaults were not too remote to be admissible. See *Eubanks*, 332 Ga. App. at 570 (1) (evidence of prior act of abuse ending approximately seventeen years prior to Eubank's trial was admissible). And any risk of unfair prejudice was mitigated by the trial court's limiting instruction, reminding the jury "to keep in mind the limited use and the prohibitive use of this evidence about the other acts of the defendant." See id. Under the circumstances, we discern no abuse of the trial court's discretion in admitting evidence of Benning's prior

sexual assaults. See *Kritlow*, 339 Ga. App. at 356 (2); *Eubanks*, 332 Ga. App. at 570 (1).

*Judgment affirmed. Ellington, P. J., and Andrews, J., concur.*