**SECOND DIVISION**
**MILLER, P. J.,**
**REESE and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 23, 2019**

# In the Court of Appeals of Georgia

A19A0357. DIXON v. THE STATE.

MARKLE, Judge.

Following a jury trial, David Michael Dixon was convicted of aggravated child molestation (OCGA § 16-6-4 (c)), aggravated sexual battery (OCGA § 16-6-22.2), two counts of child molestation (OCGA § 16-6-4 (a)), and sexual battery against a child under the age of 16 (OCGA § 16-6-22.1 (d)). He filed a motion for new trial, as amended, on the grounds that (1) the trial court erred in admitting evidence of other acts and in instructing the jury on its consideration of this evidence, and (2) he received ineffective assistance of counsel. The trial court denied the motion, and Dixon now appeals. After a thorough review of the record, and for the reasons that follow, we affirm.

Viewing the evidence in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the evidence shows that the victim visited Dixon, her great-grandfather, every day after school. In 2015, the then-eight-year-old victim saw Dixon urinating behind the house. Dixon then told her that, because she saw him, he should get to see her. Dixon made her stand naked in front of him and he penetrated her with his fingers.

The victim told a family member about Dixon's conduct, stating that Dixon would touch her "down there" and that his fingernails hurt. She later complained that it hurt when she went to the bathroom, and she told her teacher what Dixon had done. The victim said that Dixon would ask her to play with his private part and, when she refused, he offered to buy her some chips. The victim was upset and afraid and did not want it to happen again.

Following the victim's outcry, her mother notified the police and the victim's pediatrician. During a subsequent forensic interview, which was recorded, admitted into evidence, and played for the jury, the victim stated that Dixon touched her often, performed oral sex on her and made her perform it on him, and penetrated her vaginally. The victim also drew pictures depicting where Dixon touched her and where she was forced to kiss him.

Dixon's daughter and two step-daughters also came forward and admitted that he had engaged in similar inappropriate contact with each of them years earlier. Step-daughter M. B. testified that Dixon would let her "drive" the car, putting her in his lap and letting her steer. While she was seated on his lap, Dixon would place his hands inside her underwear, put his finger in her and fondle her. She remembered his long fingernails. On another occasion, she went into his room after having a nightmare and he tried to touch her inappropriately. Step-daughter S. D. testified that Dixon would rub his hand on her privates while they were playing in the lake, and he once stuck his finger in her while they were laying in bed. Dixon's biological daughter testified that he would fondle her while she sat in his lap, rub his hand on her privates, and once rubbed his penis against her vagina. Each of them stated that they were about the same age as the victim when Dixon touched them.

Investigators from the Habersham County Sheriff's Office interviewed Dixon. They also took photographs of his long fingernails.

Dixon gave a voluntary statement, which was entered into evidence and played for the jury. In his statement, Dixon initially denied the allegations, but he later said it was possible he could have touched the victim while he was asleep or when he was drunk and blacked out. He also admitted that he had always had long fingernails.

When told that his three daughters also accused him of similar conduct, he stated that each had a grudge against him and that they were trying to get even with him for leaving their mother. However, he later admitted that it was possible he touched his biological daughter because he spent more time with her.

The jury convicted Dixon on all charges. Thereafter, Dixon moved for a new trial, arguing that the trial court erred by admitting the testimony of the other three accusers and in instructing the jury as to how it could consider the other acts evidence, and that he received ineffective assistance when trial counsel failed to object to the jury instruction. Following a hearing, at which counsel testified, the trial court denied the motion for new trial. Dixon now appeals.

1. In his first enumeration of error, Dixon argues that the trial court erred by admitting the other acts evidence under OCGA §§ 24-4-413 and 24-4-414 because the court failed to determine that the evidence was relevant or to conduct the required balancing test under OCGA § 24-4-403 ("Rule 403") prior to admitting the evidence.[1] We disagree.

---

[1] Dixon was tried in 2016, and thus the new Evidence Code applies to our analysis. *Douglas v. State*, 340 Ga. App. 168, 171 (2) n. 7 (796 SE2d 893) (2017).

Under OCGA § 24-4-413 (a) ("Rule 413"), "[i]n a criminal proceeding in which the accused is accused of an offense of sexual assault, evidence of the accused's commission of another offense of sexual assault shall be admissible and may be considered for its bearing on any matter to which it is relevant." Similarly, under OCGA § 24-4-414 (a) ("Rule 414"), "[i]n a criminal proceeding in which the accused is accused of an offense of child molestation, evidence of the accused's commission of another offense of child molestation shall be admissible and may be considered for its bearing on any matter to which it is relevant." We review the admission of other acts evidence under Rules 413 and 414 for abuse of discretion. *King v. State*, 346 Ga. App. 362, 364 (1) (816 SE2d 390) (2018).

"Rules 413 and 414 create a rule of inclusion, with a strong presumption in favor of admissibility, and the State can seek to admit evidence under these provisions for any relevant purpose, including propensity." (Punctuation omitted.) *King*, 346 Ga. App. at 364 (1); see also *Benning v. State*, 344 Ga. App. 397, 401 (810 SE2d 310) (2018) (evidence relevant and admissible under Rule 413 to show intent). Nevertheless, evidence that is admissible under these rules may still be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay,

waste of time, or needless presentation of cumulative evidence." OCGA § 24-4-403; see also *Benning*, 344 Ga. App. at 402.

The trial court is required to conduct a balancing test under Rule 403 when considering whether evidence is admissible under Rules 413 and 414. *Jackson v. State*, 342 Ga. App. 689, 692 (805 SE2d 457) (2017). "This determination lies within the discretion of the trial court and calls for a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." (Punctuation omitted.) *Eubanks v. State*, 332 Ga. App. 568, 570 (1) (774 SE2d 146) (2015) (prior sexual assault 17 years earlier was admissible); see also *Harris v. State*, 340 Ga. App. 865, 868-869 (1) (b) (798 SE2d 498) (2017) (evidence of molestation that occurred 44 years earlier relevant and admissible under Rule 414 to show pattern of molestation despite remoteness in time).

Upon review, we conclude that the trial court did not abuse its discretion in admitting the testimony regarding Dixon's prior acts. First, the evidence was clearly relevant to Dixon's intent, identity, and propensity to commit the crimes. As in the instant case, the three other family members testified that Dixon engaged in the same conduct of rubbing their genitals and inserting his finger into their vaginas when they

6

were approximately the same age as the victim. This testimony is relevant to show Dixon's propensity to commit the crimes and that it was Dixon who had molested the victim.

With regard to the balancing test under Rule 403, in ruling that the evidence was admissible, the trial court stated that it had reviewed the statutes and the relevant case law. Although the trial court did not explicitly mention Rule 403, absent some express showing that the trial court did not understand its obligation to conduct the balancing test, we will not read such error into the trial court's ruling. See *Hornbuckle v. State*, 300 Ga. 750, 753 (2) (797 SE2d 113) (2017) ("In the absence of any explicit ruling by the trial court we cannot assume that it improperly applied the law in the manner posited by [the appellant]."); *Bank of Clearwater, Fla., GDN v. Kimbrel*, 240 Ga. 570, 572 (242 SE2d 16) (1978) ("it will be presumed, when there is no evidence to the contrary, that public officials, including judges, properly discharge their duties.").

Additionally, we have held that the trial court satisfies its obligation if the findings appear in the order denying the motion for new trial. See *Carter v. State*, 303 Ga. App. 142, 146 (2) (692 SE2d 753) (2010). Here, in denying the motion for new trial, the court recognized that Rule 403 applied and it explained that the parties had

discussed the balancing test at the pre-trial hearing. The court further acknowledged that it had read and considered the relevant law, and that it was not required to conduct the balancing test on the record. Given the trial court's thorough review of the issues, along with its explanations and analysis in its order denying the motion for new trial, Dixon has not shown that the trial court failed to perform its duty.

Moreover, we have never held that the trial court is required to *explicitly* analyze the balancing test on the record.[2] See *Blevins v. State*, 343 Ga. App. 539, 542

---

[2] Although we may look to the decisions of federal courts to interpret our new Evidence Code, neither the Eleventh Circuit nor the United States Supreme Court has held that explicit findings on the record are required. *State v. Almaza*, 304 Ga. 553, 556 (2) (820 SE2d 1) (2018). The other federal courts are split on the issue. Compare *United States v. Bailey*, 840 F3d 99, 117-118 (IV) (A) (1) (i) (3d Cir. 2016) ("When determining whether evidence violates Rule 403, district courts must balance the probative value of the evidence against its prejudicial effect, clarifying its reasoning on-the-record."); *United States v. Loughry*, 660 F3d 965, 972 (II) (A) (3) (7th Cir. 2011) (district court errs when it does not explain its Rule 403 balancing analysis), and *United States v. Castillo*, 140 F3d 874, 884 (I) (B) (10th Cir. 1998) ("[I]t is important that the trial court make a reasoned, recorded statement of its 403 decision when it admits evidence under Rules 413-415.") (citation and punctuation omitted), with *United States v. Daly*, 974 F2d 1215, 1217 (9th Cir.1992) ("[a] district court need not recite the Rule 403 test when balancing the probative value of evidence against its potential for unfair prejudice. We must affirm if the record, as a whole, indicates that the court properly balanced the evidence."), and *United States v. Santagata*, 924 F2d 391, 394 (II) (1st Cir. 1991) ("[A]lthough it is certainly good practice for the trier to make on-the-record findings as to the probative value/prejudicial effect balance, such findings are not always necessary.") (citation and punctuation omitted). We decline to weigh in on this debate where, as here, the trial court's order on the motion for new trial shows it considered the issue.

(1) (808 SE2d 740) (2017); *Chase v. State*, 337 Ga. App. 449, 455 (3) (a) (787 SE2d 802) (2016); see also *Fetterolf v. State*, 223 Ga. App. 744, 746 (3) (478 SE2d 889) (1996) (in a pre-2013 case, explaining that the trial court was not required to conduct the balancing test on the record). Nevertheless, in its order denying the motion for new trial, the trial court addressed the probative value of the other women's testimony, the remoteness of the other acts evidence, the similarities between the allegations, and the relevance of the prior acts to show Dixon's propensity to commit the crimes. We therefore conclude that the trial court fulfilled its duty to conduct the necessary balancing test when admitting the other acts evidence.

2. In his next enumeration of error, Dixon argues that the trial court erred in instructing the jury using the pattern jury instruction for other acts evidence because doing so invited confusion among the jurors. Specifically, he contends that the instructions first told the jury they could consider the other acts evidence to show intent and identity, but later told them they could consider the evidence for any matter to which it was relevant. We discern no error.

Before turning to the merits of this issue, we note that the trial court found in its order denying the motion for new trial that Dixon failed to preserve this issue. And Dixon concedes in his appellate brief that our review is for plain error. However, the

9

record shows that counsel repeatedly objected to any jury instruction that did not limit the use of the other acts evidence. Once the trial court indicated that it would instruct the jury that the evidence was admissible for any matter for which it was relevant, Dixon lodged his continuing objection. After the trial court finished its instructions, Dixon's counsel noted her continuing objection, and the trial court acknowledged it. This was sufficient to preserve the objection. *State v. Larocque*, 268 Ga. 352, 353 (489 SE2d 806) (1997); cf. *Beasley v. State*, 305 Ga. 231, 235 (3) (824 SE2d 311) (2019) (objection is not properly preserved if the "objection cannot be viewed as continuing;" the trial court must grant the continuing objection in order to preserve the issue). Nevertheless, regardless of which standard of review we apply, Dixon cannot prevail.

When considering the jury instructions, we read the jury instructions as a whole. *McCullough v. State*, 330 Ga. App. 716, 724 (2) (769 SE2d 138) (2015). Here, the trial court instructed the jury as follows:

> Sometimes evidence is admitted for a limited purpose. Such evidence may be considered by the jury for the sole purpose for which the evidence is limited and not for any other purpose.

> In order to prove their case . . . the State must show intent and identity of the perpetrator. To do so, the State has offered evidence of other

10

offenses of child molestation and aggravated sexual battery allegedly committed by the accused. You are committed [sic] to consider that evidence for its bearing on any matter to which it is relevant. The defendant is on trial for the offenses charged in this bill of indictment only and not for any other acts. Before you may consider any other alleged acts, you must first determine whether the accused committed the other alleged acts and such act was, in fact, an act of child molestation or aggravated sexual battery. If so, you must then determine whether . . . the act sheds any light on the issues for which it was admitted in the crimes charged in the indictment in this trial. Such evidence is, at most, supporting evidence of some issues and may not, by itself, be the basis of conviction for the case on trial. By giving this instruction, the Court in no way suggests to you that the defendant has or has not committed any other acts nor whether such acts, if committed, prove anything. This is solely a matter for your determination.

In addition, the trial court informed the jury that Dixon was presumed innocent and that the State was required to prove each element of the crimes beyond a reasonable doubt. It then defined the elements of each crime, and it explained the concept of intent. Although the instruction could be read to conflate the limited purpose of showing identity and intent with the evidence being admissible for any relevant purpose, we find no basis to overturn the verdict.

11

First, this Court has repeatedly held that the jury may consider other acts evidence under Rules 413 and 414 for any relevant purpose, including propensity to commit the crimes. *Robinson v. State*, 342 Ga. App. 624, 634 (4) (a) (805 SE2d 103) (2017). Thus, the trial court's instruction was an accurate and correct statement of the law and presents no basis for reversal. *Eubanks*, 332 Ga. App. at 571 (2) (approving of instruction that jury could consider evidence for any matter to which it was relevant). Indeed, the statutes themselves contemplate that other acts evidence "may be considered for its bearing on any matter to which it is relevant." OCGA §§ 24-4-413 (a), 24-4-414 (a).

Moreover, although the instructions given here were not ideal – the trial court at one point stated the evidence was admissible for a limited purpose, that it was admissible to show intent and identity, and then said it was admissible for any purpose for which it was relevant – any confusion did not contribute to the verdict. *McClain v. State*, 303 Ga. 6, 9 (2) (810 SE2d 77) (2018) ("a jury-instruction error is harmless when it is highly probable that the error did not contribute to the verdict.") (citation and punctuation omitted). Here, the jury was authorized to consider the evidence for any relevant purpose, including intent, identity, and propensity. *Robinson*, 342 Ga. App. at 634 (4) (a). The jury heard Dixon deny that he engaged in

any improper conduct. The other acts evidence was relevant to show that it was, in fact, Dixon who molested and assaulted the victim. Moreover, the other women testified as to the similarities between Dixon's abuse of the victim and what he had done to them. One of the women testified that she remembered Dixon's long nails, which was consistent with the victim's testimony as well as Dixon's own admission that he always kept his nails long. Thus, any confusion in the instructions did not contribute to the verdict, and Dixon cannot show that he was harmed by any alleged error in the jury instruction.

3. In his final enumeration of error, Dixon argues that he received ineffective assistance of counsel due to counsel's failure to object to the jury instructions regarding other acts evidence.

> To prevail on this claim, [Dixon] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. To prove deficient performance, an appellant must show that his attorney performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms. In reviewing counsel's performance on appeal, we must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance. If an

appellant fails to satisfy either prong of this test, we need not examine the other prong.

(Citations and punctuation omitted.) *Hardin v. State*, 344 Ga. App. 378, 381 (1) (810 SE2d 602) (2018). There is no deficient performance arising from the failure to make a meritless objection. Id. at 382 (1) (a). And where there is no error in the jury instruction, and thus no basis to make an objection, the defendant cannot show ineffective assistance of counsel. *Godfrey v. State*, 274 Ga. App. 237, 240 (1) (c) (617 SE2d 213) (2005).

In light of our conclusion in Division 2 that there was no error in the jury instruction, counsel's performance was not deficient. Therefore, Dixon cannot meet his burden to show ineffective assistance of counsel. *Hardin*, 344 Ga. App. at 382 (1) (a); *Godfrey*, 274 Ga. App. at 240 (1) (c).

For the foregoing reasons, we affirm the trial court's denial of Dixon's motion for new trial.

*Judgment affirmed. Miller, P. J., and Reese, J., concur*.