**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. Please refer to the Supreme Court of Georgia Judicial Emergency Order of March 14, 2020 for further information at (https://www.gaappeals.us/rules).**

**April 20, 2020**

# In the Court of Appeals of Georgia

A20A0542. WRICE v. THE STATE.

MERCIER, Judge.

A jury found Christopher John Wrice guilty of enticing a child for indecent purposes, aggravated sodomy, aggravated child molestation, and cruelty to children in the first degree. He now appeals from the denial of his motion for new trial, arguing that the trial court erred in admitting prior act evidence and his statement to police. We affirm.

Viewed in the light most favorable to the jury's verdict, the evidence showed that Wrice lived with his mother, who would sometimes babysit the seven-year-old victim. On two occasions in the early summer of 2016, Wrice placed his penis inside the victim's anus, telling him that it was a thermometer. The victim testified that it felt "negative" and "bad" and in his forensic interview he stated that it hurt. On one

of the two occasions, Wrice took the victim into Wrice's mother's bedroom because the door to Wrice's room would not lock. Once inside the room, Wrice placed an "army" scarf over the victim's eyes, but the victim saw Wrice's penis and that he was wearing striped underwear.

In September 2016, the victim told his older sister, and later his mother, what Wrice had done. The police asked Wrice to come to the police station for an interview. Wrice waived his *Miranda* rights and agreed to speak with police. He denied any inappropriate contact with the victim, but admitted that he owned striped underwear and a green bandana, and that his bedroom door would not lock. During a search of Wrice's home, police recovered striped underwear and confirmed that Wrice's bedroom door was attached in a way that made the lock inoperable.

The trial court also allowed prior act evidence pursuant to OCGA § 24-4-414. The State presented evidence that Wrice had pled guilty under a federal indictment to possession of child pornography and distribution of child pornography.

A jury found Wrice guilty of enticing a child for indecent purposes, aggravated sodomy,[1] aggravated child molestation, and cruelty to children in the first degree. . The trial court denied his motion for new trial, and this appeal followed.

---

[1] The aggravated sodomy count was merged for sentencing.

1. In two enumerations, Wrice complains that the trial court erred in admitting evidence of his federal convictions. The trial court allowed the admission of those convictions, entered about a year prior to the start of trial in this case, and the testimony of two Homeland Security agents who conducted the investigation resulting in his arrest in that case. The agents testified that they discovered that Wrice possessed on his computer and shared through the Internet images of young boys engaged in sexually explicit acts. Wrice pled guilty to one count of distribution of child pornography (18 USC § 2252 (a) (2)) and one count of possession of child pornography (18 USC § 2252 (a) (4) (B)).

OCGA § 24-4-414 (a) provides: "In a criminal proceeding in which the accused is accused of an offense of child molestation, evidence of the accused's commission of another offense of child molestation shall be admissible and may be considered for its bearing on any matter to which it is relevant." Another "offense of child molestation" includes conduct that would constitute possession or distribution of child pornography in violation of OCGA § 16-12-100 (b) (5) and (b) (8).

OCGA § 24-4-414 creates "a 'rule of inclusion,' thus providing a strong presumption in favor of admissibility by explaining that such evidence '*shall* be admissible.'" *McAllister v. State*, 351 Ga. App. 76, 80 (1) (830 SE2d 443) (2019)

(citations omitted; emphasis in original). However, evidence that is admissible under this rule may still be excluded under OCGA § 24-4-403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Dixon v. State*, 350 Ga. App. 211, 213 (1) (828 SE2d 427) (2019). This Court will not disturb a trial court's ruling to admit other acts evidence absent an abuse of discretion. *Chitwood v. State*, 352 Ga. App. 218, 224 (3) (a) (834 SE2d 334) (2019).

Although Wrice enumerates as error the court's "granting [of] the State's intent to present evidence of other acts pursuant to" OCGA § 24-4-414, he does not argue that the evidence does not qualify as "another offense of child molestation" under that Code section. Rather, he argues that the State may not introduce character evidence if its only objective is to demonstrate his propensity to commit the acts against the victim. However, "the State can seek to admit evidence under [OCGA § 24-4-414] for any relevant purpose, including propensity." *Dixon*, supra, 350 Ga. App. at 213 (1) (citations and punctuation omitted).

Wrice also complains of the trial court's ruling under the balancing test of OCGA § 24-4-403. He asserts that the prejudicial impact of the evidence made it

impossible for him to have a fair trial. As the trial court concluded, however, "the prejudicial impact of evidence of these types of similar transactions in child molestation cases is generally considered to be outweighed by its probative value in demonstrating an accused's disposition toward committing a molestation." *State v. McPherson*, 341 Ga. App. 870, 876 (1) (800 SE2d 389) (2017). Further,

> we must be mindful that the exclusion of relevant evidence under OCGA § 24-4-403 is an extraordinary remedy which should be used only sparingly, since it permits the trial court to exclude concededly probative evidence. Thus, we look at the evidence in the light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact.

*McAllister*, supra, 351 Ga. App. at 82 (1).

Wrice's mother testified that the victim never complained about "anything hurting" during the time she babysat him, and never observed him in distress. She also admitting telling detectives that the victim is "a liar" because all of the doors in her home had working locks. During closing argument, defense counsel asserted that there were inconsistencies in the victim's testimony and that the accusation against Wrice was not made until September. The State therefore had a need for the evidence based upon the victim's delayed outcry and Wrice's attack on the victim's credibility.

5

Under these circumstances, the trial court was authorized to conclude that Wrice's federal convictions for possession and distribution of child pornography was "not unfairly prejudicial." *McAllister*, supra, 351 Ga. App. at 84-85 (1) (c) ("It is true, of course, that when the defendant seeks to attack a victim's credibility, the State has an increased need to introduce evidence of prior acts."). See also *Holzheuser v. State*, 351 Ga. App. 286, 291 (1) (a) (iii) (828 SE2d 664) (2019) (admission by defendant that he had viewed child pornography on his phone and that search terms and URLs on the phone revealed sexually suggestive images of young girls, were relevant to defendant's intent to molest young female victim and did not present a risk of undue prejudice); *Dixon v. State*, 341 Ga. App. 255, 262 (1) (b) (800 SE2d 11) (2017) ("[T]he State's need for the evidence was great based upon [defendant]'s attacks on the victim's credibility, the lack of any physical evidence, and the victim's delayed outcry.").

2. Wrice challenges the admission of his statement to police. The trial court allowed this evidence after a *Jackson-Denno* hearing at which the detective who conducted Wrice's interview testified. In deciding the admissibility of Wrice's statements,

6

the trial court was required to consider the totality of the circumstances and determine, by a preponderance of the evidence, whether the statements were knowingly and voluntarily given. On appeal, we accept the trial court's findings of fact and credibility determinations unless they are clearly erroneous; but where controlling facts are not in dispute, such as those facts discernible from a videotape, our review is de novo.

*Norris v. State*, 302 Ga. 802, 804 (II) (809 SE2d 752) (2018).

Wrice argues that there was no evidence introduced to show his background, education, competency, or state of mind at the time he made the statement to police. The detective testified that he did not recall his notations regarding Wrice's education or age, but that he had no concerns about Wrice's level of education, intellect, or ability to understand the questions he planned to ask. The detective explained that he and Wrice discussed Wrice's hobbies, place of employment, and the fact that he had studied a foreign language. In finding that Wrice's statement was freely and voluntarily given, the trial court found that the detectives's "communication with [Wrice] showed an understanding and that there were no concerns with regard to intellect." Wrice has pointed to nothing in the record to show that his level of education or intellect required a finding that his statement was not knowingly and

voluntarily given. Based upon the evidence presented,[2] we cannot say that the trial court clearly erred in finding that his statement was knowingly and voluntarily given. See *Hopwood v. State*, 307 Ga. 305, 306 (2) (835 SE2d 627) (2019) (court did not err in admitting defendant's statement to police where record did not show she suffered from any mental incapacity at the time she made the statement); *Palmer v. State*, 277 Ga. 124, 125 (2) (586 SE2d 1) (2003) (court did not err in admitting defendant's statements to police where, although defendant pointed to evidence that he had been in special education classes since childhood, spent time in mental institutions, and suffered from a psychotic disorder, other evidence showed that his illness was controlled by medication and that he was mentally competent when he gave statements to police).

*Judgment affirmed. Miller, P. J., and Coomer, J., concur*.

---

[2] We note that the video recording of Wrice's interview with police reveals no issue regarding his intellect or competency.