**SECOND DIVISION**
**RICKMAN, C. J.,**
**MILLER, P. J., and PIPKIN, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 26, 2022**

# In the Court of Appeals of Georgia

A22A0948. HUGHES v. THE STATE.

RICKMAN, Chief Judge.

Following a jury trial, Jeremy Hughes was convicted of incest and child molestation. On appeal, Hughes contends that the verdict was contrary to and against the weight of the evidence, that the evidence was insufficient to support his convictions, and that the trial court erred by admitting other acts evidence under OCGA § 24-4-414.

"On appeal from a criminal conviction, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility, and the evidence is viewed in the light most favorable to support the verdict, with the defendant no longer benefitting from a presumption of innocence." (Citation and punctuation omitted.) *State v. Palacio-Gregorio*, 361 Ga. App. 339, 340 (862 SE2d

605) (2021). "The standard under *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), is whether the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offense." (Citation and punctuation omitted.) Id.

So viewed, the evidence showed that the victim was Hughes's step-daughter. When the victim was approximately nine years old, she began to live with her mother and Hughes. Due to her mother's work schedule, when the victim was not in school Hughes cared for her. The victim's mother testified that Hughes treated the victim as if she was his own daughter and that he loved to spoil her with gifts.

The victim testified that Hughes began touching her inappropriately when she was 11 years old. At that time, Hughes would grab her on her bottom and vagina and throw her on the bed. When the victim was 13 years old, the abuse escalated. Hughes and the victim were in his room when Hughes began to remove the victim's clothing. After taking off her clothes, Hughes engaged in sexual intercourse with the victim. The victim was scared and the sexual intercourse continued to take place atleast twice a week until the victim was almost 16 years old, right before Hughes and her mother got a divorce. Hughes threatened the victim that if she ever told anyone about the

abuse, he would kill her and the rest of her family. In addition to sexual intercourse, the victim testified that Hughes would kiss her and perform oral sex on her.

The victim's mother testified that towards the end of her marriage to Hughes he "[w]ould not sexually have any contact with me." On several occasions Hughes suggested going into the victim's room while the victim was sleeping and having sex on her bedroom floor.

Ultimately, the victim disclosed the abuse to a school counselor once Hughes was no longer in her life. After the disclosure, the victim told her mother what had happened and law enforcement was notified. The victim was interviewed by a child advocate regarding the abuse. The victim disclosed to the child advocate that Hughes raped her when her mother was at work and the child advocate testified that the victim's "interview [was] consistent with one given by a child who had been sexually abused."

A SANE nurse examined the victim. The victim had three notches on her hymen. The SANE nurse testified that a notch was

> an area of scarring . . . on the hymen. . . . What we're looking for and what we know is it's almost like V in the tissue and we call that a notch. Something that was within what we call the acute time frame we could call a tear, but once it's well-healed, we call it a notch. It feels like a scar

anywhere else on your body. You can tell that there's been a cut there, but you can't necessarily tell how long it's been there. It's healed.

The SANE nurse opined that notching was consistent with the victim's disclosure of sexual abuse.

A sergeant with the St. John's County Sheriff's Office from St. Augustine, Florida testified as an other acts witness. The sergeant testified that he posted an advertisement on Craig's List titled "Special Needs Needs Special Attention." Hughes responded to the advertisement and the sergeant indicated that he had custody of his 14-year-old niece who was deaf and was looking to make a new friend for her. After Hughes responded to the advertisement, the sergeant gave Hughes the phone number for the purported child.

Hughes began to exchange text messages with the purported child and their conversation turned sexual in nature. Hughes asked the purported child if she had ever kissed a boy and he told her that he liked to have sex. The purported child asked if she was to young for Hughes and he replied that she was not. Hughes then sent graphic messages to the purported child about specific sexual acts he enjoyed including oral sex. The conversation then progressed to what sexual acts Hughes and the purported child would do together when they saw each other. Hughes and the

4

purported child arranged a time to meet each other and when Hughes arrived at the agreed upon location, he was apprehended by law enforcement.

The sergeant testified that Hughes waived his Miranda rights and agreed to speak with him. The sergeant gave the following synopsis of their conversation:

> Hughes denied that anybody else had any access to his phone or emails. He pretty much made himself the only person who would have been in charge of the devices that were used to communicate with my undercover persona. He was eventually shown copies of the messages exchanged and indicated that they were a fair representation of the conversation that occurred. He pretty much admitted that he would be the only possible suspect through the investigation.

1. In two enumerations of error Hughes contends that the verdict was contrary to and against the weight of the evidence and that the evidence was insufficient to support his convictions.[1]

---

[1] We note that Hughes failed to include a statement of facts in his brief as required by Court of Appeals Rule 25 (a) (1). It is insufficient and a violation of this court's rules to omit a statement of facts and only reference the pertinent facts in the argument section. This violation is particularly egregious in this case where Hughes challenges the sufficiency of the evidence.

5

"In any case when the verdict of a jury is found contrary to evidence and the principles of justice and equity, the judge presiding may grant a new trial before another jury." OCGA § 5-5-20. "The presiding judge may exercise a sound discretion in granting or refusing new trials in cases where the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding." OCGA § 5-5-21. "When properly raised in a timely motion, these grounds for a new trial—commonly known as the 'general grounds'—require the trial judge to exercise a broad discretion to sit as a 'thirteenth juror.'" (Citation omitted.) *Massey v. State*, 346 Ga. App. 233, 235 (2) (816 SE2d 100) (2018). "Trial courts have discretion to grant a new trial on [the general grounds] but appellate courts do not." *Plez v. State*, 300 Ga. 505, 507 (1) n. 2 (796 SE2d 704) (2017). "Our review is limited to the legal sufficiency of the evidence." Id. "Indeed, even when asked to review a trial court's refusal to grant a new trial on the general grounds, this Court must review the case under the standard set forth in *Jackson v. Virginia*." (Citation and punctuation omitted.) Id.

The indictment in this case charged Hughes with incest in that he "did unlawfully engage in sexual intercourse with [the victim], accused's stepdaughter, knowing that he is related to the said stepdaughter by marriage[.]" See OCGA § 16-6-

6

22 (a) (1) (defining incest between father and stepchild). Hughes was also charged with child molestation in that he "did commit an immoral and indecent act to [the victim], a child under the age of 16 years, with the intent to arouse or satisfy the sexual desires of himself or said child by putting his penis in the vagina of said child[.]" See OCGA § 16-6-4 (a) (1) (defining child molestation).

The victim's testimony that she had sexual intercourse several times with Hughes, her stepfather, combined with the testimony from the SANE nurse regarding the injuries to her hymen was sufficient to support Hughes convictions for incest and child molestation. See *Davenport v. State*, 316 Ga. App. 234, 236 (1) (a) (729 SE2d 442) (2012) (affirming defendant's conviction for incest based upon the victim testimony that she and her step-father had sexual intercourse); *Smith v. State*, 320 Ga. App. 408, 410-411 (1) (a) (740 SE2d 174) (2013) (holding that there was sufficient evidence to support defendant's conviction for child molestation based upon the victim's testimony).

2. Hughes contends that the trial court erred by admitting other acts evidence under OCGA § 24-4-414.

"In a criminal proceeding in which the accused is accused of an offense of child molestation, evidence of the accused's commission of another offense of child

molestation shall be admissible and may be considered for its bearing on any matter to which it is relevant." OCGA § 24-4-414 (a). "Offense of child molestation" includes obscene Internet contact with a child under OCGA § 16-2-100.2 (e) (1) and attempted enticement of a child for indecent purposes under OCGA § 16-6-5. See OCGA § 24-4-414 (d) (1). "A person commits the offense of obscene Internet contact with a child if he . . . has contact . . . with someone he . . . believes to be a child via a computer wireless service or Internet service . . . and the contact involves any matter containing explicit verbal descriptions or narrative accounts of . . . sexual conduct [or] sexual excitement . . . that is intended to arouse or satisfy the sexual desire of either the child or the person." OCGA § 16-2-100.2 (e) (1).

OCGA § 24-4-414 "is a rule of inclusion, with a strong presumption in favor of admissibility." (Citation and punctuation omitted.) *Palacio-Gregorio*, 361 Ga. App. at 343 (2) (a). "[T]he State can seek to admit evidence under [OCGA § 24-4-414] for any relevant purpose, including propensity." (Citation and punctuation omitted.) *Dixon v. State*, 350 Ga. App. 211, 213 (1) (828 SE2d 427) (2019). "Nevertheless, the evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." (Citation and punctuation omitted.) Id. See OCGA § 24-4-403. "But the exclusion of evidence under OCGA § 24-4-403

8

is an extraordinary remedy which should be used only sparingly." (Citation and punctuation omitted.) *Palacio-Gregario*, 361 Ga. App. at 343 (2) (a). "We review a trial court's decision to admit evidence under OCGA § 24-4-414 for abuse of discretion." Id.

Hughes argues that the State failed to prove that the other act constituted an offense of child molestation. Hughes correctly points out that a completed act of enticing a child for indecent purposes as defined by OCGA § 16-6-5 requires that the victim be an actual child under the age of 16. See *Smith v. State*, 340 Ga. App. 457, 460 (1) (797 SE2d 679) (2017). Hughes, however, ignores that OCGA § 24-4-414 (d) (1) explicitly states that 'offense of child molestation' means any conduct or *attempt* or conspiracy to engage in" any conduct that would be a violation of OCGA § 16-6-5. (Emphasis supplied). We have held that attempted enticement of a child for indecent purposes can be accomplished where the defendant engaged in sexually explicit communications with a person he believed to be under the age of 16 and arranged to meet the purported child. See *Smith*, 340 Ga. App. at 461 (1). Hughes contact with the purported victim in Florida would satisfy the requirements of attempted enticement of a child for indecent purposes. Additionally, the same facts also would be a violation of OCGA § 16-2-100.2 (e) (1), obscene internet contact with a child.

9

Accordingly, the other act did constitute an "offense of child molestation" as defined by OCGA § 24-4-414 (d) (1).

The sergeant testified that Hughes admitted to sending the messages to the person he believed to be a minor. At trial, Hughes denied having any inappropriate contact with the victim. Thus, the fact the Hughes had attempted to meet another purported teenage victim to have sexual intercourse was highly probative of his motive. Under the facts and circumstances of this case and considering the strong presumption in favor of admissibility under both OCGA § 24-4-414 (a) and OCGA § 24-4-403, the trial court did not abuse its discretion in admitting the other acts evidence.[2] See *Palacio-Gregorio*, 361 Ga. App. at 343-344 (2) (a) (holding that the trial court did not abuse its discretion in admitting other acts evidence under OCGA § 24-4-414); *Boyd v. State*, 351 Ga. App. 469, 473-474 (3) (820 SE2d 163) (2019) (same).

*Judgment affirmed. Miller, P. J., and Pipkin, J., concur.*

---

[2] Because we find the other acts admissible under OCGA § 24-4-414, we need not address Hughes's argument that the trial court erred in admitting the other acts evidence pursuant to OCGA § 24-4-404 (b).