**THIRD DIVISION**
**DOYLE, P. J.,**
**GOBEIL, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**January 13, 2023**

# In the Court of Appeals of Georgia

A22A1676. THE STATE v. IPPISCH.

DOYLE, Presiding Judge.

David Ippisch stands accused in an indictment of committing one count of rape and one count of kidnapping a woman in 2019 ("Person 1"). The State now appeals from the denial of its pre-trial motion to introduce evidence of prior acts of sexual assault under OCGA § 24-4-413. The State argues that the trial court abused its discretion by ruling that the evidence was inadmissible under OCGA § 24-4-403, and for the reasons that follow, we agree.

This case has not yet proceeded to trial. Our recitation of the procedural posture is based on evidence from pre-trial hearings, including testimony from the detective who interviewed the alleged victim in this case (Person 1) about her allegations of rape and kidnapping committed by Ippisch in 2019, as well as testimony from a

different woman who alleged that Ippisch had committed a similar rape against her in 2014 ("Person 2").

According to Person 1's account, Ippisch owned a bar in Athens, Georgia, and in 2019 she went there with a group of friends as part of a night out to celebrate a friend's birthday. Person 1 believed that Ippisch would supply them with free alcohol and possibly allow her friend to celebrate on the stage in the bar where a disc jockey played music. Person 1 alleged that she was the designated driver, and after they arrived at the bar, she asked Ippisch for water, which he gave her. After she consumed the water, Person 1 "blacked out [and] couldn't remember a lot after that." Person 1 stated that while she was in a semi-conscious state, Ippisch took her against her will behind a stage curtain and raped her as she sat on a bar stool. She protested, but due to the loud music, nobody heard her during the assault. Immediately afterward, she informed her friend, and after searching for Person 1's missing driver's license, they went to a nearby Waffle House, where they encountered a police officer and reported the rape. Police later went to the scene and found Person 1's driver's license on the floor by a stool behind the stage curtain. Person 1 was also examined by a sexual assault nurse examiner, who found multiple injuries inside Person 1's vagina, as well

as other scrapes and bruises on her body. When questioned by police, Ippisch admitted that he had had sex with Person 1, but he maintained that it was consensual.

Based on Person 1's allegations, Ippisch was charged with one count of kidnapping and one count of rape. After the media reported the indictment, three other women came forward to report experiences they had had with Ippisch, and the State filed a notice of its intent to introduce their testimony as other act evidence under OCGA § 24-4-413 (b). Following a hearing at which the three women testified, the trial court ruled that none of their testimony would be admitted. The State now appeals the ruling with respect to one of those witnesses, Person 2.

Under OCGA § 24-4-413 ("Rule 413"), "[i]n a criminal proceeding in which the accused is accused of an offense of sexual assault, evidence of the accused's commission of another offense of sexual assault shall be admissible and may be considered for its bearing on any matter to which it is relevant."[1] This is a "a rule of inclusion, with a strong presumption in favor of admissibility,"[2] and proving a

---

[1] OCGA § 24-4-413 (a).

[2] (Punctuation omitted.) *Dixon v. State*, 350 Ga. App. 211, 213 (1) (828 SE2d 427) (2019).

propensity to commit sex crimes or an inappropriately lustful disposition are legally permissible purposes for admitting evidence of this sort.[3]

Also, under OCGA § 24-4-403 ("Rule 403"), "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." "This balancing requires a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness."[4] We review a trial court's ruling on the admissibility of evidence for an abuse of discretion.[5]

*Person 2's allegations*. According to Person 2's testimony at the pre-trial hearing, when she learned that Ippisch had been arrested, she was reminded of her

---

[3] See *McAllister v. State*, 351 Ga. App. 76, 80-81 (1) (830 SE2d 443) (2019) ("[a]lthough lustful disposition is not one of the purposes specifically set out in OCGA § 24-4-404 (b) for the admission of other acts, [Rule 413] provides an exception to the general rule in sexual assault cases and allows the admission of propensity evidence").

[4] (Citations and punctuation omitted.) *State v. Berrien*, 364 Ga. App. 217, 225 (2) (874 SE2d 430) (2022).

[5] See id.

own experience with him in 2014, five years before the alleged rape in this case. Person 2 testified that she met Ippisch through friends, and after a night of drinking alcohol at Ippisch's bar, Person 2 accepted his invitation to join him and others at an after-hours party at his apartment. Person 2 recalls drinking drinks made by bar employees, as well as from a bottle of wine given to her by Ippisch. "The last thing I remember [was] definitely not wanting to have sex with him [because] he was making some flirtatious jokes. . . . And the next thing that I knew I was waking up in his bed naked. He told me that we had had sex . . . I was very uncomfortable with the situation. . . . I just wanted to leave, and so I did."

This type of event happened two more times over the next few months:

I told my . . . friends . . . I don't want to go and see [Ippisch] at all. I don't want to go to his bar and drink anymore. But [we would eventually go, and] then I would wake up[,] and we had had sex. . . . One of the times I remember waking up[,] and he was already on top of me having sex with me. . . . [T]hese were all . . . incredibly distressing experiences for me. . . . I had definitely not consented to sex. . . . [H]e'd had sex with me knowing that I wasn't consenting and [was] doing it on purpose. . . .

Person 2 also described feeling that "this is just going to be my word against his, and I'm just worried that that's not going to be enough, especially considering

how little I remembered from all the events." Because of this, Person 2 testified that she later indulged "an unrealistic fantasy . . . that maybe [she] could get a confession out of him" if she started dating Ippisch and "having sex with him consensually." Person 2 and Ippisch then engaged in a consensual sexual relationship for about six weeks during the summer of 2014. Ippisch did confide certain bad and possibly illegal behavior to Person 2, but he did not admit to having nonconsensual sex with Person 2.

*Trial court's order*. After hearing Person 2's testimony and argument from the parties, the trial court held that her testimony was "relevant to the issues of lustful disposition and intent." But it then held that under the Rule 403 analysis, "the probative value of the evidence is weak because the evidence is confusing and unclear." The trial court acknowledged the similarity of the allegations of nonconsensual sex while semi-conscious, but then pointed to the fact that Person 2 started dating Ippisch and having consensual sex after the initial alleged assault, stating that "this testimony would seem inherently confusing," and noted that Ippisch claimed that the initial alleged assault was consensual. The court also stated that even if the jury believed Person 2's allegations, "there is the risk that the Defendant will

6

be convicted because of their belief of what the evidence says about his character, rather than what it says about the facts of the case being tried." Finally, it concluded that the seriousness of the allegation would lessen the curative impact of a limiting instruction to the jury about the permissible use of the evidence.

*Rule 403 analysis*. Although trial courts are afforded discretion in determining the admissibility of evidence, the trial court's Rule 403 analysis in this case is inconsistent with rules for this type of evidence in our case law and in the context of this kind of case. As a threshold matter, under Rule 413, this kind of evidence is subject to a "'strong presumption'" that it is admissible.[6] And exclusion under Rule 403 is an "extraordinary remedy"[7] — particularly when the evidence is already strongly presumed to be admissible. Exclusion is appropriate only when the demonstrable probative value (which was acknowledged by the trial court) is "*substantially* outweighed by the danger of *unfair* prejudice."[8] Not just a little outweighed, but substantially. And "[p]rejudice is not 'unfair' simply because it tends

---

[6] *Dixon*, 350 Ga. App. at 213 (1).

[7] (Punctuation omitted.) *Wilson v. State*, 312 Ga. 174, 190 (2) (860 SE2d 485) (2021).

[8] (Emphasis supplied.) OCGA § 24-4-403.

to inculpate the defendant in an awful crime[. Rather, it is unfair] only if it creates an undue tendency to suggest decision on an improper basis such as an emotional one."[9] Therefore,

> [w]hen applying Rule 403 balancing to evidence of prior offenses of [sexual assault], the court must take into account that such evidence is naturally prejudicial. However, generally, it is not unfairly prejudicial; rather it is prejudicial for the same reason it is probative: it tends to prove the defendant's propensity to [engage in sexual assault].[10]

For this reason, the trial court's concern about unfair prejudice to Ippisch's character was unfounded. Even in a vacuum, the allegations in this case are inherently unseemly, and Person 2's account goes no farther (and arguably less far[11]) than the alleged offense at issue. Further, in this particular context, it is not improper to attempt to prove a propensity to commit the illegal sex act or to prove an inappropriate lustful disposition toward non-consenting sex partners.[12] Because the prejudice to Ippisch stems from a proper use of the evidence to prove his "propensity

---

[9] (Punctuation omitted.) *Berrien*, 364 Ga. App. at 227 (2) (b).

[10] (Emphasis omitted.) *Wilson*, 312 Ga. at 190 (2).

[11] Person 1 told police that she only drank what she believed to be water given to her by Ippisch.

[12] See *McAllister*, 351 Ga. App. at 80-81 (1).

to engage in non-consensual sex" with an unconscious or semi-conscious partner, the prejudice resulting from that is not *unfair* prejudice.[13] Notably, Person 2 explicitly testified that Ippisch "had sex with me knowing that I wasn't consenting and [was] doing it on purpose." This is precisely what makes her testimony probative, and in the context of a sexual assault case, it does not make it unfairly prejudicial.[14] Thus, weighing this prejudice in the Rule 403 analysis was improper.

Conversely, the probative value was substantial in this case.

The probative value of specific evidence depends on two things: (1) the need to establish the fact for which the evidence is offered, which in turn depends on that fact's significance in the case and whether or not that fact is disputed, and (2) the "marginal worth" of the evidence in establishing the fact, which depends on what other evidence is available. Here, the issue of consent is both essential and disputed, so the need to establish this fact is strong. And the marginal worth of the other-act evidence is high because the other available evidence on consent just pits the victim's word against [Ippisch's].[15]

[E]xtrinsic evidence of similar sexual assaults may be offered for the purpose of corroborating the victim's testimony when the defense argues

---

[13] *Berrien*, 364 Ga. App. at 226 (2) (a).

[14] See, e.g., *Wilson*, 312 Ga. at 190 (2); *Berrien*, 364 Ga. App. at 226 (2) (a).

[15] (Citations and punctuation omitted.) *Berrien*, 364 Ga. App. at 226 (2) (b).

that the victim consented[, as Ippisch did to police in this case]. One of Congress's expressed rationales for Rule 413[, upon which Georgia's rule is modeled,][16] is the need for corroborating evidence when the alleged rapist claims consent, and there are no witnesses other than the defendant and the alleged victim. Just as evidence corroborating a victim's testimony concerning rape would have a tendency to disprove a defense of consent, [which is at issue here,] it would similarly serve to disprove a defense that the victim had a motive to fabricate allegations of rape[, which is also intertwined with the consent defense.][17]

Therefore, the probative value of Person 2's testimony, which is already strongly presumed to be admissible under Rule 413, is heightened by the alleged facts and circumstances of this case.

Next, with respect to the trial court's characterization of Person 2's testimony as "inherently confusing" because she dated Ippisch after the initial alleged assault,

---

[16] See generally *Olds v. State*, 299 Ga. 65, 69 (2) (786 SE2d 633) (2016) ("Many provisions of the new Evidence Code were borrowed from the Federal Rules of Evidence, and when we consider the meaning of these provisions, we look to decisions of the federal appellate courts construing and applying the Federal Rules, especially the decisions of the United States Supreme Court and the Eleventh Circuit.").

[17] (Citations and punctuation omitted.) *Marlow v. State*, 337 Ga. App. 1, 4 (1) (b) (785 SE2d 583) (2016), overruled on other grounds by *Quiller v. State*, 338 Ga. App. 206, 209 n.3 (789 SE2d 391) (2016). See *United States v. Enjady*, 134 F3d 1427, 1433 (II) (A) (10th Cir. 1998).

Person 2's subsequent conduct has no bearing on her account of the initial assault. Person 2 consistently maintained that she never consented to Ippisch having sex with her while she was unconscious or semi-conscious, even if Ippisch asserted a different view. And Person 2 explained that dating Ippisch was a misguided effort to "get a confession out of him." Moreover, as a legal matter, Person 2 was not required to corroborate her account of the nonconsensual sex with other facts or her subsequent conduct,[18] nor did the trial court need to "make a preliminary finding that the alleged prior similar conduct in fact occurred before admitting it into evidence."[19] Instead, all that is required is that the State show that "a jury could find by a preponderance of the evidence that the defendant committed the act," which Person 2's testimony alone authorized.[20]

Finally, the trial court raised two other potential problems with Person 2's testimony: it would result in a mini-trial within a trial, and a jury might not be able

---

[18] See *Dixon v. State*, 341 Ga. App. 255, 259 (1) (a) (800 SE2d 11) (2017).

[19] (Punctuation omitted.) Id. Courts have held that even "a prior acquittal of a criminal charge will not necessarily preclude admission of other act evidence under the Federal Rules of Evidence." Id.

[20] (Punctuation omitted.) Id. See also OCGA § 24-14-8 ("The testimony of a single witness is generally sufficient to establish a fact.").

to follow instructions for properly considering Person 2's testimony. The latter concern is largely resolved by the discussion above regarding the more expansive purposes properly allowed for Rule 413 evidence. And the former concern is always present in any case involving allegations of sexual assault not witnessed by a third party. But given Rule 413's strong presumption in favor of admissibility, excluding evidence on that basis alone is improper absent other more weighty concerns not present in this case.

Accordingly, based on the standards set forth in Rule 413 and 403, as developed by Georgia case law, as well as the circumstances and testimony at issue in this case, the trial court abused its discretion by excluding Person 2's testimony on the present record.

*Judgment reversed. Gobeil, J., and Senior Appellate Judge Herbert E. Phipps concur.*